# Employer Advantage

A Professional Employer Organization

A CLIENT SERVICE AGREEMENT

between

Ozark Delivery, LLC
Federal Identification #43-1634488

and

The Employer Advantage, LLC
1230 East 7th Street
Joplin, Missouri 64801
(417)782-3909

1. **Recipient Service Agreement.** This agreement is effective this 25th day of July, 2005 by and between The Employer Advantage, LLC (hereafter referred to as "EA") and the Recipient company identified in item # 4, (hereafter referred to as "Recipient").

2. **The Employer Advantage Place of Business.** The Employer Advantage place of business is 1230 East 7th Street, Joplin, Missouri, 64801.

3. **The Employer Advantage Identification.** EA, hereby discloses that its business name is The Employer Advantage LLC, with offices in Joplin, Missouri. The Employer Advantage provides employer services.

   EA is an organization defined under Internal Revenue Code § 414(n) and the regulations promulgated thereunder. Both EA and Recipient understand that this service agreement cannot be used to discriminate in any way against employees as per Internal Revenue Code § 414 (n). Recipient acknowledges and agrees that any action on Recipient's part to attempt to induce a breach of said Code shall cause the immediate termination of this Agreement, without recourse by Recipient, and that Recipient shall be responsible for compliance with all statutory provisions identified in Internal Revenue Code § 414(n).

   EA warrants that it is a member in good standing of the National Association of Professional Employer Organizations (NAPEO). However, both Recipient and EA agree that EA's membership in NAPEO is not a material aspect of this agreement and that any change in membership status does not constitute a breach or default of this Agreement. EA also agrees to inform Recipient of any change in NAPEO membership status.

4. **Recipient Identification.** Recipient's business name is: Ozark Delivery, LLC

   Recipient is a For-Profit business, whose headquarters or principal place of business is located at: 9726 West 145th Terrace, Overland Park, Kansas.

   Organizational Date: January 1985

   Name of Parent Corporation (If subsidiary): N/A

   Address: N/A

   Recipient is divided into the following divisions: N/A

   Recipient operates the following lines of business: Trucking - Mail/Parcel

5. **Disclosure of Any § 414(n) Relationship.** Recipient acknowledges the importance of the existence of any "relationship" defined under Internal Revenue Code § 414(n). (This refers to prior contract relationship with a Staff Service Company.) Recipient has either disclosed by letter to its professional tax advisor the existence and terms of any such relationship within the past six (6) years, or has no such relationship to disclose, and Recipient indemnifies and holds harmless EA for any consequences arising out of the incorrect, or inaccurate nature of such disclosure.

   [X] Recipient has no such relationship

   [ ] Recipient now has an existing Internal Revenue Code § 414 (n) relationship with the following PEO:

   [ ] Recipient has a past IRC § 414(n) relationship within the past six (6) years with the following PEOs:

6. **Description of Employment Services.** The parties to this Agreement acknowledge and agree that it is their mutual desire and purpose to engage EA to provide certain off-site human resources to Recipient's facility at their location(s). It is not Recipient's desire to escape, or EA's desire to assume, any risks or responsibilities unless expressly stated herein; specifically, EA does not assume products liability, premises liability or safety risks attendant to ownership of premises and equipment, which are traditionally and correctly assigned to the owner of a business, location or equipment.

Recipient acknowledges that EA and Recipient are entering into a joint employer agreement, and that EA will enter into a written agreement with each employee recognizing EA's role as a joint employer. EA acknowledges that any existing employment agreement(s) between employees and Recipient will remain in force. Recipient agrees to subject all IRC § 414(n) workers classified as Recipient's employees to EA's contractual agreement, and to cause all wages due to said employees to be paid by EA.

Recipient further acknowledges that the inclusion of employees under this agreement does not relieve Recipient of certain obligations and responsibilities attendant to doing business. That is, Recipient acknowledges that it is aware that certain statutes, e.g., Internal Revenue Code § 414(n), impose obligations upon both EA and Recipient. Recipient further acknowledges that its exercise of certain management functions in the work place may cause Recipient to be legally liable for those actions.

EA acknowledges it is responsible for all employment matters relating to payment of federal, state, and local employment taxes. EA does hereby hold Recipient harmless from any direct out-of-pocket expenses of Recipient, which may result from EA's failure to withhold their taxes or failure to conduct itself in accordance with the laws of the State of Missouri and the United States. Recipient expressly acknowledges, however, that EA shall not be liable for Recipient's loss of business, good will, profits, or other special consequential or incidental damage, or for Recipient's own mistakes or negligence.

Recipient agrees to cooperate in establishing and implementing a Drug Free Workplace policy or program. Furthermore, the Recipient agrees to cooperate with EA in conducting pre-employment and/or post-employment (with continued employment contingent on results) background investigations, as permitted by law, for job positions with significant employer liability exposures such as truck drivers [MVR review], security guards, etc.

Recipient retains a right of direction and control over hiring, termination, discipline, wages, hours of work, and other employment practices necessary to conduct business in a reasonable manner, providing such practices are conducted in accordance with Federal and State regulation, as well as employment guidelines and procedures issued from time to time by EA. EA reserves a right of direction and control over employment practices and procedures to the extent necessary to ensure compliance with said regulations and guidelines.

7. **Recipient Benefits Package Disclosure.** The below itemized benefits package is based upon Recipient's disclosure to EA of all current benefits established at Recipient (company and pertinent facilities) as well as such benefits made available to employees at said company and facilities for the past six (6) years. Recipient acknowledges the importance of such full and complete disclosure, and hereby indemnifies and holds harmless EA for any inaccuracies in said disclosure as well as EA's reasonable reliance thereon.

Recipient has provided the following employee benefits to employees during the past six (6) years: **Simple IRA**

8. **EA Benefits Plan Disclosure.** EA will provide to all IRC § 414(n) employees at the Recipient's work locations the following benefits. EA will be responsible for administration and compliance of the following benefits but only as long as this agreement remains in effect: **Medical, Voluntary Life, Accidental Death & Dismemberment, Group Life, Vision, Supplemental Product, Cafeteria 125c & 129c and 401k Plan under separate agreement.**

Recipient will continue to provide employee benefits. Recipient agrees to retain responsibility for administration and compliance of these benefit programs. These benefits are listed as follows: **To be determined**

The following benefits will be provided under a contract between Recipient and a benefit provider. EA will be responsible for administration and compliance of these benefits as long as this agreement remains in effect. Recipient hereby grants a limited power of attorney to EA to negotiate rates, sign agreements and contracts, and authorize agents/brokers to represent Recipient in regard to the following benefits: **To be determined**

9. **Reservation of Right to Change Benefit Plan(s).** Recipient acknowledges that changes in circumstance, fact, law, or any other condition may cause a change in the benefits offered or administered by EA. Recipient specifically authorizes EA to effect any such change that EA deems necessary, upon reasonable notice to Recipient. EA states that it will endeavor to make such changes with as much notice as reasonably possible, and in a manner designed to ensure minimum inconvenience to EA's and Recipient's shared employees.

10. **Recipient's Warranty as to Previous Benefits Elections.** Recipient warrants that all Internal Revenue Code §§ 125 & 129 elections heretofore made are based upon professional advice, lawful and permitted under said sections. Recipient indemnifies and holds harmless EA for any legal consequences arising out of §§ 125 & 129 elections or coverage heretofore made.

    ☐ Recipient has made previous Internal Revenue Code §§ 125 & 129 elections.

    ☒ Recipient has made no previous Internal Revenue Code §§ 125 & 129 elections.

11. **Employer Advantage Safety Responsibility.** Recipient shall comply with all health and safety laws, regulations, ordinances, directives, and rules imposed by controlling federal, state and local governments and will immediately report all employee accidents and injuries to EA. Recipient agrees to comply, at its own expense, with any specific safety directives from EA, EA's workers' compensation carrier, or any government agency having jurisdiction over workplace safety. Recipient shall provide or ensure use of all personal protective equipment as required by federal, state or local law, regulation, ordinance, directive, or rule deemed necessary by EA or EA's workers' compensation carrier. EA, EA's workers' compensation carrier, and EA's liability insurance carriers shall have the right to inspect Recipient's premises for any reason deemed fit. To the extent possible, such inspection shall be scheduled at a mutually convenient time. In no event shall this right or the exercise of this right affect the Recipient's obligations to EA and the employees specified in this Agreement, nor shall this right or the exercise of this right, have any effect upon the indemnifications contained herein.

    Pursuant to these responsibilities, EA retains a right of direction and control over employment policies and procedures which relate to the management of safety and risk at Recipient's location(s), including, but not limited to:

    a. policies, practices, and procedures for the selection, rejection, assignment, replacement, or termination of employees

    b. safety inspections of Recipient equipment and premises;

    c. promulgation and administration of employment and safety policies; and

    d. management of claims, claims filing, and related procedures.

12. **Records and Worksite Inspection.** Recipient will allow EA and its workers' compensation carrier the right to inspect Recipient's records and worksite, in order to verify job duties and compensation of employees, as well as verify compliance with safety requirements during the term of this Service Agreement. The WC carrier may audit Recipient's records and worksite for up to one year after the end of any policy period, even if this Service

Agreement has been terminated. Should EA services be terminated, EA will furnish loss experience data to the Recipient upon request

13. **Recipient's Safety Responsibilities.** Recipient shall comply with all applicable provisions of the Occupational Safety and Health Act of 1970 (OSHA), regulations promulgated under the Act, posting requirements, directives, orders of abatement, stipulations of abatement (collectively, the OSHA), as well as any comparable actions required by State occupational safety and health laws (State-OSHA). Recipient agrees to defend and hold EA harmless, from and against any and all claims, damages, abatements, and/or penalties assessed as a result of Recipient's violations of any provisions of federal or state OSHA regulations.

14. **Joint Legal Responsibilities.** Both EA and Recipient agree to comply with all applicable labor laws and laws regarding equal employment opportunities. Neither EA nor Recipient shall discriminate on the basis of national origin, race, color, religion, age, sex, handicap, or any other protected category or description.

    In no event shall EA bear any responsibility for wage-hour compliance, claimed, in whole or in part, to have occurred before the execution or after the termination of this Agreement. Recipient recognizes that improper handling of a wage-hour investigation can result in substantial prejudice to both Recipient and EA, and that time is of the essence in any such matter. Accordingly, Recipient and EA both warrant that each will inform the other of any indication or information that wage-hour compliance may become a disputed issue under this Agreement. Recipient pledges it is not presently aware of any circumstance which could lead to a wage-hour claim. For purposes of this paragraph and without limitation, "disputed issue" means any challenge from any third party regarding compliance with applicable wage-hour laws or regulations, any audit by a state or federal agency, or any notice of alleged non-compliance from any person or governmental agency.

    Recipient and EA agree that compliance with government-imposed record-keeping requirements is an essential component of any business relationship and this Agreement. Each party to this Agreement specifically assumes the record keeping obligations associated with its respective duties identified herein. Each party indemnifies and holds harmless the other for its performance of said record keeping obligations. Nothing in this paragraph shall be construed to relieve either party of the contractual duty to cooperate with each other in the performance of these record keeping obligations. Recipient acknowledges and agrees that it may be required to comply with certain record keeping obligations, or assist in the compliance therewith, which it had not heretofore been so obligated to meet. Recipient specifically indemnifies and holds harmless EA for the legal consequences of EA's truthful reporting to the government of activity on Recipient's part which could generate any form of legal liability.

    Recipient and EA agree that the beginning date of employment for existing work-site employees will be the same as the EA liability date, as set forth in Schedule D. Both parties also agree that all future hires will become co-employees only upon EA's receipt of a completed Employer Advantage New Hire Packet.

15. **Indemnification: General & Mutual.** Both parties to this agreement agree to release, defend, indemnify and hold each other harmless from any and all negligent acts which they may respectively commit, or any failure or omission to act in performance of their respective duties under this agreement. For purposes of this indemnification clause, the traditional tests of direction and control shall determine on whose behalf any employee or other person was acting at the time of the incident in question.

    **Indemnification: Recipient to Employer Advantage**
    Recipient agrees to defend and indemnify EA from any claims made by employees resulting from actions of the Recipient, its employees or agents, except when such actions are taken under direction and counsel of EA. Such claims shall include, but are not limited to, charges of discrimination brought through any state or local Fair Employment agency, the U.S. Equal Employment Opportunity Commission; claims brought before the Workers' Compensation Division (or such similar department, commission, or board in states other than Missouri); claims, charges, audits, or lawsuits alleging failure to comply with applicable federal and/or state

wage and hour laws; charges or lawsuits alleging wrongful termination, discrimination, breach of employment contract, personal injury (including, without limitation, emotional and/or mental distress), slander, Service Letter Act violations, unfair labor practices, workplace safety citations, state or federal contract compliance claims, or any other causes of action that arise under federal, state or local employment or labor laws relating to the employment relationship, discipline, discharge or employee conduct.

Recipient shall also defend and indemnify EA from employee claims of sexual or other unlawful harassment by Recipient or its agents or employees. The duty to defend includes the duty to pay reasonable attorney's fees incurred by EA in defending such claims, and the duty to indemnify includes the duty to pay any award imposed by an administrative agency or judgment or settlement reached in a court, agency, or arbitration action. EA reserves the right to select counsel for defense of any claims against EA described earlier in this Section.

### Indemnification: Employer Advantage to Recipient
EA is solely responsible for administrative employment matters, including payment of federal, state, and local employment taxes. EA agrees to hold Recipient harmless from direct out-of-pocket expenses of Recipient which may result from EA's failure to withhold these taxes or failure to conduct itself in accordance with the local, state and federal laws governing tax withholding and other employment laws and regulations. However, EA shall not be liable in any event for Recipient's loss of profits, business goodwill or other consequential, special or incidental damages.

### Indemnification: To Third Parties
Recipient acknowledges that certain Recipient activities could expose third persons, who are not parties to this agreement, to potential risk, which might entail liability to either Recipient or EA. Recipient specifically, without reservation, and without limitation of any previous or subsequent provision of this Agreement, indemnifies and holds harmless EA for any such liability to third parties.

16. **Claims/Change Notification.** Recipient agrees to notify EA immediately, of the assertion or possible assertion of any and all claims by employees, and to cooperate with EA in the investigation and defense of said claims. With specific regard to this paragraph, time is of the essence.

    Further, Recipient agrees to notify EA immediately in the event of a change in an employee's status, pay or job duties. Recipient also agrees to notify EA of any person beginning work for Recipient within 24 hours of the employee's start date. Such notification will be provided in a form and manner prescribed by EA.

17. **Disclosure By Recipient.** Recipient acknowledges that a material condition of this Agreement is complete and full disclosure of all information requested by EA. Further, Recipient agrees to indemnify EA for any material omission or failure to disclose any materials requested. Such a material omission may, at EA's sole option, result in immediate termination of this agreement.

    a. <u>Benefit Plans & Insurance Policies</u>
    Recipient acknowledges and understands that complete knowledge of all benefits and benefit plans is essential to lawful provision of employee benefits under this Agreement. To that end, Recipient warrants that it has disclosed to EA the existence of all employee benefits now in effect or that have been provided in any form or fashion over the past six (6) years, either by Recipient or any other party.

    b. <u>Government Investigations/Inquiries</u>
    Recipient acknowledges that it is essential to EA's performance of this Agreement that EA have complete knowledge of any sort of government investigation, inquiry or private adversary action which could in any manner impact upon the types of duties contemplated by this Agreement. For example, but not by way of limitation, an audit by the Workers' Compensation Division or the Department of Labor could affect the performance of those respective functions under this Agreement. Thus, Recipient hereby makes complete and full disclosure of any such investigation, lawsuit, or other

adversary proceedings. Examples of government investigations and inquiries might include, but are not limited to:

>   EEO/Affirmative Action
>   Wage-Hour
>   NLRA/LMRA/MRDA/Union Organization
>   OSHA/Other Safety
>   Workers' Compensation
>   Unemployment Compensation
>   Government Contract
>   Any other federal, state or local labor and/or employment laws

Recipient warrants that this disclosure is complete without exception for the last six (6) years. Recipient specifically warrants that, at the conclusion of each of the above-identified proceedings, it achieved "current compliance" in each of the identified areas. Recipient further states that it believes it is now in compliance with the legal requirements of each of the above-identified areas. Recipient hereby releases, indemnifies, and holds harmless EA for any and all liability in the above-referenced areas which have arisen or may arise for any events or occurrences before the execution of this Agreement, including continuing violations which began prior to, but continue into the time period of this Agreement. Recipient further understands, acknowledges, and agrees that, upon the termination in any manner of this Agreement, that Recipient shall assume full responsibility and liability for the above-mentioned areas immediately upon termination.

c.  Previous Employment Relationships
Recipient acknowledges that complete disclosure of all facets of its previous employment relationships with the employees and job positions covered by this Agreement, as well as employees and job positions, are essential to successful performance of this Agreement. Recipient warrants that it has made such complete disclosure, and indemnifies and hold harmless EA for the legal consequences arising from any shortcoming, inaccuracy, or mistake therein.

Recipient discloses the following investigations or inquiries during the past six (6) years: None

18. **Insurance.**
    A. Workers Compensation Insurance

        i. EA shall furnish and keep in full force and effect at all times during the term of this Agreement workers' compensation insurance covering all employees at Recipient's location(s) for the following states. Upon written request by Recipient, EA shall furnish a Certificate of Insurance verifying coverage.

            [X] Schedule E ( The Employer Advantage Risk Management Service Agreement)

            States of Missouri, Kentucky, Mississippi and Tennessee ~~and~~ & *Alabama*

        ii. Recipient shall furnish and keep in full force and effect at all times during the term of this agreement workers compensation insurance with a minimum combined single limit of one million dollars ($1,000,000). Recipient shall cause its insurance carrier to issue a Certificate of Insurance providing for not less than thirty (30) days advance notice of cancellation or material changes.

            **All states other than those above listed**

B. General Liability Insurance

i. Recipient shall furnish and keep in full force and effect at all times during the term of this agreement general liability insurance with a minimum combined single limit of one million dollars ($1,000,000). Recipient shall cause its insurance carrier to issue a Certificate of Insurance providing for not less than thirty (30) days advance notice of cancellation or material changes.

ii. In the event an employee is assigned to fill a job function requiring said employee to operate a vehicle for Recipient, Recipient shall furnish auto liability insurance. The policy shall insure against public liability for bodily injury and property with a minimum combined single limit of five hundred thousand dollars ($500,000) and uninsured motorist insurance with a minimum combined single limit of one hundred thousand dollars ($100,000). In states where "no-fault" laws apply, Personal Injury Protection (P.I.P.) or equivalent coverage shall be required. Recipient shall cause its insurance carrier to issue a Certificate of Insurance providing for not less than thirty (30) days' advance notice of cancellation or material changes. EA shall be listed as an additional named insured on the Policy, which shall be provided to EA upon request.

iii. The parties hereby waive any claim in favor of each against the other by way of subrogation or otherwise, which arises during the term of this agreement, for any and all bodily injury, loss of or damage to any of its property which loss or damage is covered by policies of insurance, to the extent that such loss or damage is recovered under such policies of insurance. Since mutual waivers will preclude the assignment of any aforesaid claim by way of subrogation or otherwise to an insurance company or any other person, each party agrees to immediately give each insurance carrier which insures any of its property, written notice of the terms of said mutual waiver, and to have said insurance policies properly endorsed, if necessary, to prevent the invalidation of said insurance coverage by reason of said waiver. Each party shall cause its insurance carrier to provide written evidence of said waiver.

iv. Recipient and EA acknowledge, understand, and agree that EA is not licensed or insured for the performance and risks of malpractice or errors and omissions for certain professional duties including but not limited to: medical, legal, nursing, architectural, engineering, pest inspecting, real estate, insurance, or accounting duties "Said Duties." The exercise of professional responsibility, control, discretion, and judgment for the performance of, and supervision over, "Said Duties" rests solely and exclusively with Recipient. Recipient indemnifies and holds harmless EA for any liability arising out of the performance of "Said Duties."

Recipient has the following licensed professionals performing "Said Duties": None

19. **Payment & Fee Mechanisms.** Recipient hereby agrees to pay EA a fee as determined by EA for services performed by EA and for all wages and associated costs incurred by or payable to all Personnel. Said fee and the payment terms thereof are specified in the Fee Schedule attached hereto as Schedule "C", which is hereby made a part of this Agreement. Recipient's fee obligation shall continue during normal periods of Personnel absence for vacation, sick leave, legal holidays and emergency situations. The fee shall be payable during the entire term of this Agreement. EA may adjust its fee schedule by providing Recipient thirty (30) days advance written notice of such adjustment.

Recipient therefore agrees to pay on demand an amount of three percent (3%) of any delinquent payment. Checks or electronic items returned unpaid, from Recipient's bank, will be subject to the same late payment charge, plus any additional costs incurred by EA. Any unpaid balances will also be subject to periodic charges

of one and one half (1.5%) percent per calendar month until paid. EA reserves the right to suspend or terminate the services to Recipient without notice until full payment has been made of any amount past due.

20. Payment Assurances. At the beginning of services with EA, Recipient will provide EA with payment assurance (as per Schedule B). Recipient shall maintain, at all times, this payment assurance with EA. Said payment shall be in the form of an irrevocable letter of credit issued by Recipient's bank or a cash payment assurance. With the delivery of checks for the first payroll, and for each payroll period thereafter, Recipient will receive an invoice for the actual fee amount of that payroll. Recipient will thereafter pay the actual fee to EA in the amount itemized on the billing statement. Should Recipient fail to pay this fee to EA or any other payment to EA when due, EA reserves the right, subject to its sole discretion, to call upon the payment assurance to pay the amount due and suspend service until payment assurance is restored. The payment assurance is placed with EA to guarantee performance of all terms, covenants, conditions and obligations of the Recipient under the Agreement. EA shall release any unused payment assurance to Recipient within sixty (60) days after termination of the Agreement provided Recipient has performed each of its obligations under this Agreement.

21. **Default & Termination.**
    a. Termination with Notice - This Agreement shall commence on July 25th, 2005 ("the Effective Date") and be in force for a period of one (1) year from the Effective Date. It shall be automatically renewed for each additional one (1) year term unless either party gives the other party written notice of its intention not to renew this Agreement no later than sixty (60) days prior to the expiration of the then current item.

    In the event that Recipient fails to provide sixty (60) day notice, Recipient shall be liable to pay EA its full administration fee for up to sixty (60) days after the date of notification. Such administration fees will be based on the average administration fees collected per pay period during the ninety-day period immediately preceding Recipient's Notice of Termination. Such termination shall not relieve EA of its obligations for any unpaid wages and benefit costs hereunder, nor shall such termination relieve Recipient of its indemnification obligations under Sections 14 & 15, or fee obligations under Sections 19 & 20 of this Agreement, through and including the effective date of such termination. Such Sections shall expressly survive the termination or expiration of this Agreement.

    b. Employee Notification - Upon the termination of the Agreement pursuant to the provision of this section, EA and Recipient shall notify all persons employed at Recipient's location of the termination of EA's joint employer responsibilities. Employees will also be advised that the termination of this agreement does not negate their right to seek subsequent employment or assignment through EA.

    c. Cause of Termination Without Notice - EA reserves the right to suspend or cancel service without notice in the event Recipient is found in default of any obligations under this agreement, including but not limited to:

        i. failure to meet any or all payment obligations for EA services,
        ii. failure to properly report all time worked and wages of the work-site employees,
        iii. failure to disclose or any attempt to misrepresent key information regarding the nature of work duties (business operations and location of workers),
        iv. failure to report changes in business operations, financial conditions or workforce that would materially change the cost and/or risk of providing EA services,
        v. failure to comply with workplace policies related to employment practices, safety & return-to-work programs, or timely injury reporting.

    d. Termination Without Notice - EA retains a right to claim compensation for service. Recipient shall be liable to pay EA its full administration fee for up to thirty days after the date of suspension or cancellation of services. Such fees will be based on the *average administration fees* collected during

the ninety (90) day service period immediately preceding Termination. Such termination shall not relieve EA of its obligations for any unpaid wages and benefit costs hereunder, nor shall such termination relieve Recipient of its indemnification obligations under Sections 14 & 15, or fee obligations under Sections 19 & 20 of this Agreement, through and including the effective date of such termination. Such Sections shall expressly survive the termination or expiration of this Agreement.

22. **Choice of Law and Dispute Resolution.**
    a. **Mediation.** Upon mutual agreement between EA and Recipient, disputes may be settled through the process of mediation. Upon such an agreement, each party shall provide the other with a list of three qualified mediators to whom it would submit the dispute to mediation. The parties shall combine the names onto one list and, with Recipient striking first, take turns striking names until one mediator remains. That mediator shall mediate the dispute.

    b. **Arbitration.** All other disputes are subject to mandatory arbitration. Any dispute between the parties hereto or a claim by a party against the other party arising out of, or in relation to this Agreement or in relation to any alleged breach thereof shall be finally determined by arbitration. The arbitration proceeding shall take place in Joplin, Missouri, or such other location as the parties in the dispute may agree. The parties shall either agree upon an arbitrator or, if they are unable to so agree, shall engage the services of the American Arbitration Association (AAA) to obtain a list of five arbitrators who shall be skilled in the legal and business aspects in the subject matter of this Agreement and of the dispute. The parties, with the Recipient striking first, shall take turns striking names from said list of arbitrators, thus the one remaining arbitrator shall arbitrate the dispute.

    The party alleging the dispute shall alone bear the cost of retaining the arbitrator's services. In the event that the party alleging the dispute prevails, this cost shall be awarded by the arbitrator as damages to the prevailing party. The arbitrator shall apply the AAA's Commercial Arbitration Rules and the Federal Arbitration Act, and shall be bound by the substantive laws of the State of Missouri. Conflict of laws rules shall not apply. All claims must be filed with the selected arbitrator(s) within the applicable statute of limitations under Missouri law.

    Any claim exceeding $20,000.00 (Twenty Thousand and No/100 Dollars) shall be heard by a panel of three arbitrators. For claims exceeding $20,000.00, the parties shall each have the right to choose one arbitrator from a list provided by the AAA, and those arbitrators shall appoint the third arbitrator, who will serve as chief arbitrator and render the panel's decision and award. Any decision rendered by the arbitrator may be accompanied by a written opinion and support thereof, and shall be final and binding between the parties in dispute without right of appeal. Judgment upon any such decision may be entered into by any court having jurisdiction thereof, or application may be made to such court for a judicial acceptance of the decision and an order of enforcement.

    The cost of the arbitration (except the initial retainer fee) shall be assessed by the arbitrator against any or all of the parties in dispute, and shall be paid promptly by the party or parties so assessed. This agreement to arbitrate shall survive the termination, expiration or breach of this agreement by any party.

23. **COBRA.** EA agrees to provide administration of COBRA and/or State Mandated continuation of coverage provisions for the duration of this agreement. Such provisions will be administered as they may apply to either Recipient or EA, whichever is the contractually responsible party for each benefit plan.

    In the event of cancellation of this contract, Recipient shall have the duty and responsibility for replacing or continuing for the employees such health care coverages as shall avoid the generation of a qualifying event under Internal Revenue Code § 4980B. Recipient acknowledges this responsibility and liability, as well as the

liability for a qualifying event under Internal Revenue Code § 414(n), and specifically indemnifies EA for said liability.

Further, Recipient agrees that in the event of termination of this agreement, Recipient will assume responsibility and liability for administration of all COBRA/State Mandated provisions for any such participants or eligible parties with respect to benefits plans for which Recipient is contractually responsible. EA will continue to administer COBRA provisions for participants who experience one or more qualifying events prior to termination of this contract, for benefit plans for which EA sponsors and for which it is contractually responsible. It is further understood that termination of this service agreement, in and of itself, cannot be defined as a qualifying event under COBRA/State Mandated provisions.

24. **Notices.** All notices, requests, demands and other communications hereunder shall be in writing and addressed to each party as follows:

    If to the Company:     The Employer Advantage, LLC
                           1230 East 7th Street
                           Joplin, Missouri 64801
                           Attention: N. Lee Allphin
                           Phone: 417-782-3909 / Fax: 417-782-3802

                           Ozark Delivery, LLC
                           Att: Klein Calvert
                           9726 West 145 Terrace
                           Overland Park, KS 66221
                           Phone: 913-402-8399 / Fax: 913-402-8887

    Any such notice shall be deemed to be given (i) on the date of service, if served personally or by fax on the party to whom such notice is to be given, (ii) on the day after deposit, if deposited with a nationally recognized courier for overnight delivery to the party to whom notice is to be given, postage prepaid and properly addressed, or (iii) on the third day after mailing, if mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid and properly addressed.

25. **Titles and Headings.** Titles and headings to sections herein are inserted for the convenience of reference only and are not be intended to be a part of or to affect the meaning or interpretation of this Agreement.

26. **Counterparts.** This Agreement may be executed in counterparts, including facsimiles thereof, all of which taken together shall constitute one instrument.

27. **Entire Agreement.** This Agreement represents the entire agreement between the parties, and supercedes any prior discussions, negotiations, verbal or written agreements or agreements in principle. The parties agree that any amendment or revision of this Agreement shall be made in writing only, which shall be signed by the Owner, CEO, President or equivalent of each party or an assignee.

28. **Severability.** In the event that a court of competent jurisdiction or an arbitrator, under the processes of Paragraph 22 of this Agreement determines that any provision(s) of this Agreement is invalid as a matter of law, the remaining provision(s) of this Agreement shall remain fully valid and enforceable.

29. **Waiver.** Performance of any obligation required by a party hereunder may be waived only by a written waiver signed by the other party or a duly authorized officer of the other party, which waiver shall be effective only with respect to the specific obligation described therein. The waiver by either party hereto of a breach or an obligation of the other shall not operate or be construed as a waiver of any subsequent breach of the same

provision or any other provision of this Agreement. The parties further agree that no failure or delay on either party's part to exercise any right, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or future exercise of any right, power or privilege hereunder.

**THIS CONTRACT CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.**

In Witness Whereof, the parties hereto have executed this agreement effective this 25th day of July, 2005.

_____
President/CEO of The Employer Advantage, LLC

_____     Pres    7-25-05
Recipient or Assignee            Title           Date

_____    Risk Manager    7-25-05
EA Representative               Title           Date

# The Employer Advantage Service Agreement

## Schedule A
## ON-SITE SUPERVISOR IDENTIFICATION
## for Ozark Delivery, LLC

The following individuals have been designated as having supervisory responsibility at the Client's work location(s). Recipient will notify EA, in writing, of any changes to this schedule.

Please include all Owners and Officers.

| Name | Title | Job Description | Status |
|---|---|---|---|
| Klein Calvert | Managing Member | President | Exempt |
| Pam Calvert | Member | Partner | Exempt |

# The Employer Advantage Client Service Agreement

## Schedule B
## STATEMENT OF PAYMENT ASSURANCE
## for Ozark Delivery, LLC

In assurance of the performance of contracted services by The Employer Advantage, Recipient shall pay to EA a fee consisting of the sum of the following:

| | | | | |
|---|---|---|---|---|
| 1. | The cost of each gross payroll amount for one pay period: | | $ | 71,900.00 |
| 2. | The Employer Advantage administrative fee: | 25.26 %<br>*Average Percentage* | $ | 18,162.00 |
| | Recipient shall provide payment assurance in the amount of | | $<br>*Total* | 90,062.00 |

Due date: The payment assurance will be due on this the 29th day of July, 2005. This date is the last banking day before the first payroll period.

Payment Options:  ☒  Letter of Credit - this Payment Assurance type shall be in the form of an *Irrevocable Letter of Credit*, issued by Recipient's bank. See sample attached (Schedule F).

☐  Cash Payroll Assurance

EA reserves the right to delay, suspend, or void services provided under this service agreement if Recipient fails to provide payment assurance as outlined herein.

Initial /s/

# The Employer Advantage Client Service Agreement

## Schedule C
## FEE SCHEDULE
## for Ozark Delivery, LLC

A. One time fee of $25.00 *corrected* per current employee shall be charged to the Recipient for start-up of services (Includes all contract work, supervisory orientation, employee meetings, payroll records, benefit enrollments, etc.) to be included on the first billing invoice.

B. One time fee of $25.00 shall be charged to the Recipient for each new employee hired after commencement of services.

C. Charge for services.

| WC Code | Classification/Description | Percentage |
|---------|---------------------------|------------|
| KY 7231 | Trucking - Mail/Parcel | 24.54% |
| KY 8810 | Office Clerical | 14.95% |
| MO 7231 | Trucking - Mail/Parcel | 27.63% |
| MO 8810 | Office Clerical | 15.33% |
| MS 7231 | Trucking - Mail/Parcel | 25.37% |
| MS 8810 | Office Clerical | 14.20% |
| TN 7231 | Trucking - Mail/Parcel | 21.11% |
| TN 8810 | Office Clerical | 14.99% |

*It is the Recipient's responsibility to notify EA in advance of:*

- *Any changes or additions in workers compensation classification codes*
- *Additions and/or changes of those states listed in Section 18 (A, i) of this contract*

*In the absence of said notice, EA will assess fees at a rate equal to the highest rate listed herein on any payroll falling into such classifications.*

Initial

The Employer Advantage Client Service Agreement

Schedule D
INITIAL PAYROLL & LIABILITY SCHEDULE
for Ozark Delivery, LLC

Date on which EA will assume payroll liability for its responsibilities outlined herein: **July 31, 2005**

Payroll Frequency:

- ☐ Weekly
- ☐ Bi-Weekly
- ☐ Semi-monthly
- ☐ Monthly

Accounting for pay periods:

W/B  Begins on: (Calendar Day):  **Sunday**

    Ends on: (Calendar Day):  **Saturday**

**Direct Debit / Wire Transfer Day**  Wednesday

First EA Pay Period Dates:

            August 7th, 2005 *KM*

  Begins      ~~July 31, 2005~~ 13th

  Ends       ~~August 6, 2005~~ *KM*
           15th

  Report Payroll Data to EA:  ~~August 8, 2005~~ *KM*

Mode of Reporting:

- Telephone
- Fax
- **Electronic Data**

1st Payroll Checks dated  ~~August 12, 2005~~ 19th

First Checks Delivered:  ~~August 14, 2005~~ 18th

Note Mode of Payroll Delivery:  UPS Ground

Initial *KM*

Page 15

# Schedule E

# The Employer Advantage, LLC
## Risk Management Service Agreement

This agreement, between Ozark Delivery, LLC (Recipient) and The Employer Advantage, LLC (EA), having a *Risk Management liability date as determined by Schedule D* of The Employer Advantage Client Service Agreement.

### The Employer Advantage Agrees to:

1. Arrange for and keep in force, through a bonafide insurance agency/broker, the workers' Compensation Coverage for all workers employed at Recipient's location(s), provided that such workers are covered under the standard agreement and their wages are reported to and paid by EA. It is understood that such coverage will be provided through a workers compensation insurance carrier, written under EA's name through such carrier. If EA cannot secure coverage in one or more states in which the Recipient operates, it will be the Recipient's responsibility to obtain and keep in force coverage in those states.

   It is understood that EA is not an insurance agent/broker. However, EA can determine, quote, and bill for costs associated with its Risk Management Program, including, but not limited to, workers' compensation premium and administrative fees that reflect certain services detailed herein.

2. Invoice Recipient for Risk Management Program costs based on actual payroll. Such billing will occur with each invoice produced by EA. EA will invoice Recipient based on Recipient's past three (3) years of loss history and current NCCI modification factor based on classification rates assigned by the carrier. EA further agrees to provide, upon reasonable request from Recipient, justification for all rates and fees charged. Any and all financial incentives/credits that are made available by the carrier, will be the result of the overall success and compliance of the risk management guidelines and plan.

3. Administer paperwork and reports associated with such coverage, including but not limited to, injury reports and audit requests. Employer Advantage will also provide OSHA 300 Log reporting.

4. Make available Loss Control resources, programs and technical support to Recipient's location(s) for the purpose of promoting and ensuring a safe workplace.

5. Be available to set up, train and implement Safety Committees at Recipient's location(s) and provide all forms and support necessary to ensure such committee's ability to function properly. Training can include but is not limited to implementation of an annual risk management assessment and training for entire employee staff. The training would include but not be limited to, the OSHA standards that require annual training.

6. Identify, in conjunction with On-Site Management, transitional work opportunities and implement such opportunities.

7. Provide a certificate of insurance to Recipient when such is required in the normal course of Recipient's business. Such certificate will identify EA as the employer and policy holder, with all workers at Recipient's location(s) covered by said policy.

Initial

### The Recipient Agrees to :

1. Report or cause to be reported to EA all accidents or other incidents which could result or have resulted in injury or illness. Such events are to be reported within twenty four (24) business hours, (identified as Monday through Friday) to ensure compliance with EA's current risk management guidelines. Should injury occur during a standard weekend (identified Saturday or Sunday), or on a holiday, the injury must be reported within eight (8) hours of the next working day (8:00am - 5:00pm CST). Non compliance with EA's current risk management guidelines will result in a $500.00 fine in addition to the Recipient's current deductible. In order to avoid fines, **ACCIDENTS MUST BE REPORTED IMMEDIATELY.**

2. Make reasonable accommodation for the implementation and ongoing function of a safety committee at each permanent location. Such accommodation will include permission for the committee to meet at least monthly, with all members being paid for their time. Such time will not exceed one hour per member per month, with any exception subject to Recipient's approval. Recipient further agrees to allow committees to be organized according to current EA Risk Management guidelines, and will not present any obstacle to the committee's performance.

3. Follow EA Risk Management Guidelines on all Safety Measures, Training and Verification.

4. Make the premises available for risk management assessments safety inspections and training, as deemed necessary by the EA Risk Management Department, or its insurance carrier, and/or the on-site Safety Committee.

5. Report immediately to EA any communications and/or citation involving OSHA. It is further understood that Recipient assumes responsibility for any such citation.

6. Accommodate reasonable requests and recommendations from on-site and corporate safety committees. Recipient will provide full justification for any such request not honored. Current Risk Management guidelines will define all procedures for complying with committee requests and recommendations, as well as remedies for items deemed cost-prohibitive.

7. Participate in transitional return-to-work programs and opportunities as identified by EA and the safety committee. It is understood that wages for such programs will be billed to Recipient as part of a regular payroll invoice.

8. Agrees to notify The Employer Advantage of any subcontracting agreements, to include name, address, and phone number. All subcontractors should make available Certificates of Insurance to The Employer Advantage.

9. Use designated physicians for treatment of medical care for employees. The Employer Advantage retains the right to determine the doctor/facility the employee should use, where allowed by law.

10. Deductible Program $ 500.00 per accident.

☐ Recipient further agrees: to comply with any recommendations from The Employer Advantage, LLC Loss Prevention Department.

**Deductible Program Stipulations:**
EA will pay the entire cost of the medical bills directly to the provider of the services and then seek reimbursement from Recipient for the deductible amount. Reimbursement to EA must be made within fifteen (15) days of written invoice. Non-payment of medical deductible amounts within fifteen (15) days shall be treated in the same manner as non-payment of Risk Management Fees and coverage will be subject to immediate termination of worker's compensation insurance.

Initial _____

Medical Deductible option will be offered at each EA policy renewal term. Acceptance / Rejection into deductible program is subject to underwriting approval.

A medical deductible option of a policy will mean that the subscriber is liable for the amount of the deductible, listed above, for the medical benefit paid on each individual claim for bodily injury by accident or disease filed by any employee injured during the policy term, regardless of when the claim is filed.

Once medical deductible acceptance is made and policy goes into effect, change of medical deductible can only be made on EA's subsequent renewal date.

Medical deductible does not include other claim expenses such as taxes, administrative fees, vocational training, etc. It applies only to medical expenses.

It is understood that certain financial considerations may be provided to Recipients by the EA Risk Management Department as incentives and/or awards. EA reserves the right to determine distribution of such incentives or awards based on Recipient's level of cooperation and adherence to program guidelines.

This agreement may be terminated by either party with thirty (30) days written notice. If Recipient is at any time deemed by the EA Risk Management Department to be willfully negligent in compliance to Risk Management guidelines, EA reserves the right to cancel the Recipients Risk Management Program immediately (including workers' compensation insurance), without notice.

| Signature (Recipient) | Date |
|---|---|
| *X Calt* | 7-25-05 |

| Print Name | Title |
|---|---|
| Klein Calvert | Pres |

| Signature (EA Representative) | Date |
|---|---|
| *[signature]* | 7-25-05 |