IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

CALVIN CHILDRESS, et al. On Behalf of )
Themselves and of all Others Similarly )
Situated, )
)
          Plaintiffs, )
)
vs. )   Case No.: 09-CV-3133-MDH
)
OZARK DELIVERY OF MISSOURI L.L.C. )
and KLEIN CALVERT, and EMPLOYER )
ADVANTAGE, L.L.C. )
)
          Defendants. )

# SUGGESTIONS IN SUPPORT OF EMPLOYER ADVANTAGE, LLC'S MOTION FOR SUMMARY JUDGMENT

John Power (MO Bar No. 35312)
R. Anthony Costello (MO Bar No. 50968)
**HUSCH BLACKWELL LLP**
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
Telephone: (816) 983-8000
Facsimile: (816) 983-8080
john.power@huschblackwell.com
tony.costello@huschblackwell.com

*Attorneys for Employer Advantage, LLC*

## I. INTRODUCTION

A fundamental premise to any FLSA claim is that an employer-employee relationship existed between each of the plaintiffs and the defendant(s). Simply put, if the plaintiffs cannot establish the employment relationship, there can be no liability. In answering this question, the courts do not look at what the parties claim their relationship is but rather they look at what they actually did. By that, the courts look at the economic realities of the work place; did the defendant hire or fire the employees, did it supervise them and determine their salaries. Employer Advantage did none of these things with regard to the Ozark Delivery of Missouri, LLC ("Ozark") employees. Consequently, there was no employer-employee relationship between Employer Advantage and the plaintiffs and, as such, Employer Advantage cannot be liable for any purported FLSA violations.

**The Defendants**

Ozark provided delivery services, typically packages, to businesses and homes in seven states and from nine locations. Ozark's primary source of business was to make local deliveries services on behalf of DHL, Inc.. Each of Ozark's locations was supervised and run by a manager but major <u>decisions</u>, such as firing a driver, were made by the on-site manager and Klein Calvert, the owner of Ozark. The plaintiffs drove various delivery vans on behalf of Ozark. The plaintiffs were subject to the day-to-day supervision and management of Ozark's on-site manager.

Employer Advantage was and is in the business of providing its clients with certain back room services such as human resources, benefits, insurance, risk management, management of certain claims as well as similarly situated services. The services that Employer Advantage provides to a specific client are typically spelled out in a Client Service Agreement.

From July 25, 2005 up to December 23, 2006,[1] Employer Advantage provided certain back room services to Ozark but it did not have an employment relationship with the plaintiffs in 2006 and certainly not after 2006. Because there is no employment relationship between plaintiffs and Employer Advantage, Employer Advantage cannot be liable under the FLSA.

## II. EMPLOYER ADVANTAGE'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS

1. Employer Advantage LLC ("Employer Advantage") is a Missouri LLC engaged in the business of providing certain backroom services for various businesses. *See* July 25, 2005 Client Service Agreement ("2005 Agreement") at p. 3, § 6, attached hereto and made a part hereof as Exhibit A.

2. Ozark Delivery, LLC ("Ozark") is a Missouri limited liability company. *See* State of Missouri, Amended Articles of Incorporation, attached hereto and made a part hereof as Exhibit B.

3. Klein Calvert was the managing member and president of Ozark. *See* Exhibit A at p. 12.

4. Ozark provided delivery services for domestic delivery packages for either Airborne Express or DHL. *See* Klein Calvert deposition, p. 10:21-11:8, attached hereto as Exhibit C.

5. Ozark provided its services from 9 to 12 locations in 7 different states, Missouri, Kansas, Arkansas, Mississippi, Alabama, Kentucky and Virginia. *Id.*, at p. 11:14-20, p. 13:5-14.

6. On July 25, 2005, Employer Advantage and Ozark entered into the 2005 Agreement. *See* Exhibit A.

---

[1] From December 23, 2006 up to December 29, 2007, EA Advantage provided certain back room services to Ozark. Similar to Employer Advantage, EA Advantage did not have any control over the employees (it did not hire or fire them, supervise them or control their work and it did not determine their rate or method of pay. EA Advantage is not a party to this proceeding.

7. Pursuant to the express terms of the Employer Advantage Agreement, Employer Advantage was to perform the payment of federal, state and local employment taxes. *See* Exhibit A at p. 2, § 6, ¶ 4.

8. Under the terms of the Employer Advantage Agreement, Employer Advantage also administered certain, discrete employee benefit programs: Medical, voluntary life, accidental death and dismemberment, group life, vision, supplemental product, cafeteria 125c and 129c and the 401k plan. *Id*. at §§ 6 and 8.

9. Under the terms of the Employer Advantage Agreement, both parties acknowledged that they were entered into a joint employer agreement. *Id.* at § 6, ¶ 2.

10. Under the terms of the Agreement, Ozark Delivery ("Ozark") controlled on-site employment activities, including the hiring and firing of employees, determining employee wages and hours worked as well as compliance with all health and safety laws and regulations. *Id.* at § 6, ¶ 6.

11. Under the terms of the Agreement it was Ozark's obligation to properly report all time worked and wages of Ozark's work-site employees. *Id.* at § 21(c)(ii)(iii).

12. Under the terms of the Employer Advantage Agreement, both parties agreed "that all future hires will become co-employees only upon [Employer Advantage's] receipt of a completed Employer Advantage new Hire Pact. *Id.* at § 14, ¶ 4.

13. After Employer Advantage and Ozark entered into the Employer Advantage Agreement, Employer Advantage entered into an "employment agreement" with seven (7) of the plaintiffs, Calvin Childress, Rodney Harris, Jolene Loyd, Zach McElwain, Faye Shumpert, Corey Smith and Cynthia Williams (the agreements are attached hereto and made a part hereof as Exhibit D 1-7).

4

KCP-4493062-2
Case 6:09-cv-03133-MDH   Document 139   Filed 11/26/14   Page 4 of 16

14. The Agreement between Employer Advantage and the seven individuals provided that the Agreement "would terminate in the case of . . . the written service agreement between Employer Advantage and [Ozark] is terminated." *See* Exhibit D1-D7, § 3(a).

15. Approximately once a year someone from Employer Advantage would visit the Ozark locations. Calvert deposition, Exhibit C at p. 45:2-11.

16. The Employer Advantage employee looked at safety aspects such as Ozark employees lifting with their legs and not their back; however, the Employer Advantage employee never told an Ozark employee how to do his job and he never talked directly to an Ozark employee. *Id.* at 41:20-42:12, 43:10-44:13.

17. Effective December 24, 2006, Ozark ceased doing business with Employer Advantage and commenced doing business with EA Advantage. *See* EA Advantage Client Service Agreement (the "EA Advantage Agreement"), attached hereto and made a party hereof as Exhibit E.

18. Klein Calvert decided to cease working with Employer Advantage and began working with EA Advantage because he did not want to pay for workers compensation any longer. Exhibit C, p. 97:15-98:13.

19. EA Advantage is its own limited liability company, separate and apart from Employer Advantage. *See* Russell Kemp's deposition at pp. 14:2-15:15, attached hereto as Exhibit F.

20. As of January 1, 2007, EA Advantage began performing payroll services for Ozark's employees. *See* plaintiffs' paystubs attached hereto and made a part hereof as Exhibit G.

5

21.     EA Advantage is not a party to this proceeding.  *See* Plaintiffs' Amended Complaint.

22.     In 2007, Klein Calvert's son, Kyle Calvert, began performing the screening of potential Ozark drives and he monitored the Ozark employees on a hands-on-type basis.  Exhibit C, Calvert deposition, p. 33:8-21; 38:17-40:9.

23.     In 2007, the Ozark employees used Calvert applications for employment and they began receiving Calvert Employee Notebooks.  *See* 2007 Ozark employee paperwork attached hereto as Exhibit H.

24.     Sometime in 2007, Klein Calvert had a conversation with Russ Kemp, Vice-President of Employer Advantage, regarding wage and hour issues.  *See* Calvert deposition, Exhibit C, p. 47:13-49:2.

25.     Kemp recalls discussing with Calvert that Ozark ran split shifts where an employee may work in the morning and then come back in the afternoon to run an additional route.  Kemp wanted to make certain that the drivers were relieved of all duties during the time frame between the morning shifts and afternoon.  Kemp told Calvert to the extent that the drivers were completely off work that Ozark would not have to pay them for those hours but that Ozark needed to pay the drivers for the hours they worked.  Klein further advised Kemp that none of the employees worked over 40 hours a week.  Kemp then advised that overtime would not be a problem if that was the case but that in any event Klein should keep track of the drivers' hours.  *See* Kemp deposition at p. 54:20-56:5.

26.     At all relevant times, Ozark's managers were the people who supervised the day-to-day activities of the Ozark employees.  *See* Calvert deposition, Exhibit C, at p. 100:24-101:2; 101:22-102:7; 102:24-103:16.

27. At all relevant times Ozark leased all of the delivery vehicles. Exhibit C at p. 14:4-18.

28. At all relevant times, it was Ozark's managers who controlled the work hours or determined the work schedule of the Ozark employees. *Id.* at p. 100:24-101:2; 102:13-16.

29. At all relevant times, it was Ozark's managers who controlled the conditions of employment for the Ozark employees. *Id.* at 100:24-101:2; 101:22-102:1.

30. At all relevant times, the Ozark managers were the people who hired the Ozark employees. *Id.*, at 92:25-93:2.

31. At all relevant times, Klein Calvert and the Ozark managers determined the Ozark employees who should be terminated. *Id.* at p. 90:23-9:2. Employer Advantage was never involved in a termination. 105:4-15.

32. Employer Advantage never came to an Ozark location and told an Ozark employee what to do. *Id.* at 41:20-42:12; 43:10-20.

33. At all relevant times, Ozark's managers determined the duties that the Ozark employees were to perform. *Id.* at 88:6-12.

34. At all relevant times, Ozark's managers evaluated and trained Ozark's employees. *Id.* at 103:17-104:7.

35. At all relevant times, Klein Calvert and the Ozark's managers determined the rate or method of paying the Ozark employees. *Id.* at 90:15-22.

36. Ozark's drivers were paid a salary based on the driver's route. Calvert deposition *Id.*, at p. 27:3-25.

37. Because Ozark paid its drivers a salary, it did not report to Employer Advantage the hours the drivers worked. *Id.*, at 95:7-22.

7

38. At all relevant times, Ozark's supervisors were the ones who determined or approved the employee's sick leave or vacation time. *Id.* at 105:16-106:4.

39. On December 17, 2007, Ozark terminated its relationship effective as of December 29, 2006 (sic). *See* December 17, 2007 letter from Klein Calvert to Lee Alphin, attached hereto as Exhibit I. *See also* Exhibit C, 98:14-99:2.

## III.  LEGAL STANDARD

It is well established that summary judgment is appropriate where the movant shows there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment satisfies its burden if it can demonstrate "that there is an absence of evidence to support the non-moving party's case[.]" *Celotex Corp.*, 477 US at 325. Although the Court must view the evidence in the light most favorable to the non-moving party, it is not enough for the non-moving party to show the existence of some alleged factual dispute between the parties. In responding to the summary judgment motion, the non-moving party has "the obligation to present to the court something more than conclusory obligations, speculation or the mere existence of a scintilla of evidence[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Mutsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts."); *see also Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997)("fanciful inferences and bold speculations of the sort no rational trier of fact could draw or engage in at trial need not be drawn or engaged in at summary judgment.").

If the reality is that there are no material facts in dispute then the matter should be resolved at the summary judgment stage and not at the trial stage. "Where no genuine issue of material fact exists," it is the "affirmative obligation of the trial judge to prevent factually

8

KCP-4493062-2
Case 6:09-cv-03133-MDH   Document 139   Filed 11/26/14   Page 8 of 16

unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-779 (4th Cir. 1993).

**IV.    ARGUMENT**

  A.    <u>Employer Advantage is Not an Employer Under the Economic Realities Test.</u>

Plaintiffs in this case contend that Employer Advantage is a joint employer. *See* Plaintiffs' Amended Complaint at ¶ 9. The burden is on the plaintiffs to prove that an employment relationship existed with Employer Advantage. *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1360 (8th Cir. 1993). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 230(d).[2] Courts do not, however, enforce these definitions literally because to do so would make even employee supervisors and agents open to liability. *Lloyd v. Ace Logistics, LLC*, 2208 WL 5211022 *3, n. 6 (W.D. Mo. 2008); *Bowman v. American Corp.*, 2005 WL 1702820 *5 (E.D. Mo. 2005).

When determining who is an employer, the courts have determined that "whether the parties intended to create an employment relationship is irrelevant." *Beck*, 391 F. Supp. 2d at 1186. Furthermore, contractual provisions and concepts alone cannot create a relationship. *Id.*, at 1190; *Jeanneret*, 2002 WL 32114470 at *9. Instead, the courts look to the economic realities of the workplace to determine whether an entity, such as Employer Advantage, is an employer. The economic realities that the courts look to when deciding who is a joint employer "are whether the alleged employer: (1) had the power to hire and fire the plaintiff; (2) supervised and controlled plaintiff's work schedule or conditions of employment; (3) determined the rate and method of payment; and (4) maintained plaintiff's employment records." <u>Loyd</u>, 2008 WL

---

[2] A determination of employment status under the FLSA is a question of federal law. *Beck v. Boce Group*, 391 F. Supp. 2d 1183, 1186 (S.D. Fla. 2005) citing *Jeanneret v. Aron's East Coast Towing, Inc.*, 2002 WL 32114470 at *2 (S.D. Fla. June 29, 2002).

9

5211022 at *3.[3] *See also Bowman v. Doe Run Resources Corp.*, 2014 WL 3579885 *4 (E.D. Mo. 2014); *McClain v. Health Systems, Inc.*, 2011 WL 2650272 *2 (W.D. Mo. 2011); *Nicholas Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012); *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997); *Arean v. Central Florida Investments, Inc.*, 2012 WL 1191651 *13 (M.D. Fla. 2012). Because the courts eschew a technical definition of employment, no one factor is dispositive of realities test. *Arnold v. DirecTV, Inc.*, 2012 WL 4480723 *5 (E.D. Mo. Sept. 28, 2012). In this case, the economic realities of the parties is that Employer Advantage is not a joint employer of the Ozark employees. The court in *Loyd v. Ace Logistics, LLC*, 2008 WL 521022 (W.D. Mo. 2008), a case substantially comparable to the present case, reached a similar conclusion. *Id*. at *3-4.[4]

In *Loyd*, the plaintiffs brought a FLSA claim against three different entities, claiming that each of them were joint employers. One of the defendants, Ace Next Day ("Ace"), admitted that it was an employer of the plaintiffs. Plaintiffs claimed that another of the defendants, TSL, was an employer because TSL and Ace had entered into an agreement whereby TSL provided Ace with the following:

(1) drivers to use in Ace's day-to-day operations of hauling packages throughout the metropolitan area in delivery vans and pickup trucks[5] (*Id*., at *3, 6);

(2) performed payroll functions, including issuing W-2s (which identified TSL as the employer) for the personnel (*Id.,* at *3-4)*;*

(3) handled workers compensation insurance for the personnel (*Id*., at *3);

(4) maintained the human resource files for the employees (*Id*., at *4); and

---

[3] Although the court in *Loyd* acknowledged that the Eighth Circuit had not yet set out a joint employer test it relied on the test set out in *Schubert v. Bethesda Health Group, Inc.*, 319 F. Supp. 2d 963, 971 (E.D. Mo. 2004).
[4] Tellingly, the lead plaintiff in *Loyd* (Jolene Loyd) is also one of the lead plaintiffs in the case before this court. Plaintiffs' law firm in this case was also plaintiffs' law firm in the *Loyd* case.
[5] TSL is a professional employee leasing organization that furnished personnel and employment services to trucking companies. *Id*., *3.

10

(5) ensured compliance with all federal wage and hour laws (*Id*.).

The court dismissed plaintiffs' FLSA claims against TSL because it was not a joint employer under the economic realities test.[6] More specifically, the court found that even though TSL satisfied the fourth element of the economic realities test by maintaining Ace's human resource files, and even though TSL ensured compliance with all federal wage and hour laws and even though TSL was identified as an employer on plaintiffs' W-2s, it still was not enough to make TSL and employer because plaintiffs had no evidence that TSL hired, fired or supervised the plaintiffs or controlled their work schedule. *Id.* at *4. As a result, the court dismissed TSL from the proceeding. *Id.*

The court should reach the same result in this case as the court reached in *Loyd*. The burden is on plaintiffs to establish each and every element of the economic realities test. *Reich*, 987 F.2d at 1360. It is clear that the plaintiffs cannot satisfy the elements of the test, especially when compared to the facts of *Loyd*.

| Element | Entity that Controlled in Present Case | Entity that Controlled in *Loyd* |
|---|---|---|
| 1. Power to hire and fire plaintiffs | Ozark Delivery and Klein Calvert. *See* SUF # 30, 31 | No evidence it was TSL p. *4 |
| 2. Supervision of plaintiffs and control of plaintiffs' work schedule | Ozark Delivery. *See* SUF # 26, 28, 29, 32, 33, 34, 38 | No evidence it was TSL p. *4 |
| 3. Determined the rate and method of pay | Ozark Delivery. *See* SUF # 35, 36, 37 | Not discussed by the Court |
| 4. Maintained employment records | Employer Advantage for 2006 | TSL at p. *4 |

A review of the chart demonstrates that if TSL was not an employer in *Loyd*, then by stronger reasoning, Employer Advantage should not be found an employer in this case. Here,

---

[6] Plaintiffs also sued Ace Logistics as a joint employer under the FLSA. Plaintiffs' claim against Ace Logistics was that Ace Logistics owned Ace and because an Ace Logistics' Vice President provided Loyd with his Ace Logistics business card. *Id*., at 4. The court rejected plaintiffs' arguments as insufficient or irrelevant under the economic realities test and dismissed Ace Logistics from the lawsuit. *Id*., at *4.

11

there is affirmative evidence that it was Ozark and/or Calvert that controlled the work place (whereas in *Loyd* there was a lack of evidence). Just as the court concluded in *Loyd*, the mere fact that Employer Advantage maintained records for a short period of time is not enough to conclude that it should be liable under the FLSA as an employer. *Loyd* at p. *4. Given the totality of the circumstances, Employer Advantage had no control over Ozark's employees (*see* SUF 15, 16 and 31). The court should rule that Employer Advantage is not an employer and therefore is not liable for plaintiffs' FLSA claims.

The fact that Employer Advantage and Ozark entered into an agreement whereby they agreed that they were joint employers is irrelevant to the determination of economic realities of the work place. *Jeanneret v. Aron's East Coast Towing, Inc.*, 2002 WL 3211470 (S.D. Fla. 2002). In *Jeanneret*, defendant Sunshine Companies II ("SSII") operated an employee leasing business. SSII entered into an agreement with Aron's East Coast Towing ("Arons") whereby SSII would lease its employees to Aron's. *Id.* at *4. Pursuant to the terms of the agreement, the parties specifically agreed that "the relationship created by this agreement is a joint employer relationship. . . ." *Id.* Plaintiff, a tow truck driver, alleged that both Aron's and SSII acted as his employers within the meaning of the FLSA. SSII moved for summary judgment because it did not control the workplace and therefore it was not his employer.[7]

Plaintiff opposed SSII's motion almost solely on the language contained in the agreement. Specifically, the plaintiff pointed to the references to "joint employer" in the agreement and to those portions of the agreement that purported to grant SSII powers over the plaintiffs. *Id.,* * 4, 6 and 9. The court rejected plaintiffs' arguments, in part, because "technical contractual concepts alone do not satisfy the 'economic realities' test." *Id.*, at *9. The court found that plaintiffs'' scouring the fine print of the contract to highlight provisions that SSII

---

[7] The court had already entered a default judgment against Aron's. *Id.* at *10.

"retained the right of direction and control over aspects of the work place was to no avail when plaintiff failed to provide evidence as to what happened in practice." *Id.* *6. (Although under the contract SSII retained a right of direction and control over the work site, there was "no evidence that [SSII] in practice supervised [plaintiff's] work." *Id.* *6.)

In the present case, the language in the agreement between Employer Advantage and Ozark that the parties are joint employers or that Employer Advantage reserved a right of direction and control are irrelevant to the court's determination because the uncontroverted facts are that it was Ozark that controlled the work place in practice. *Id.*, at 6-7. *See* SUF # 26, 28, 29, 32-34, 38. *See also Beck v. Boca Group*, 391 F.Supp.2d 1183, 1190 (S.D.Fla. 2005). ("Thus, reliance on contractual provisions without other evidence indicating that the employer possessed the right to hire, fire or modify the conditions of employment <u>in practice</u> is unavailing." (Emphasis added).) The court's reasoning to look at how the parties actually behaved in the work place rather than what the parties say is the only sensible approach. If the contract language did govern who was an employer then the parties could easily craft language to avoid liability even though the realities are that the entity was an employer. The economic realities, however, cannot be evaded or crafted around. That is why "the economic realities test requires this Court to consider and evaluate the employment relationship in practice." *Id.* The practice in this case is that Ozark was the defendant that actually exercised the right to hire, fire or modify the conditions of employment. SUF # 26, 28-34 and 38. *See also, Salley v. PBS of Central Florida, Inc.,* 2007 WL 4365634 *2 (M.D. Fla. 2007)(the courts determine whether an employment relationship exists based on the parties' actual working relationship).

B.  After 2006 Employer Advantage Had No Relationship, Contractual or Otherwise, with the Parties

In December of 2006, Ozark informed Employer Advantage that it no longer wished to use its services. SUF # 17-18. Employer Advantage stopped processing payroll on December 3, 2006. Pursuant to the terms of the 2005 Agreement and the employer agreements with the employees, all relationships that Employer Advantage had with the parties were terminated both in writing and in practice. After December 2006, Employer Advantage no longer processed payroll (SUF # 20) or maintained Ozark's employee files or performed any function on behalf of Ozark. In 2007, Klein Calvert had a conversation with Russ Kemp regarding whether Ozark's drivers were off the clock between the morning and afternoon routes and the need for Ozark to keep track of its drivers' hours (SUF # 24-25). Irrespective of whether Klein ever followed Kemp's suggestions, the conversation took place after Employer Advantage ceased performing services on behalf of Ozark. A solitary, isolated conversation held after the end of the relationship is not enough to make Employer Advantage in control of the work place. In other words, the 2007 conversation is not enough to make Employer Advantage an employer.

To be sure, EA Advantage did enter into a contract with Ozark which was effective as of December 23, 2006 (SUF # 17). This relationship is irrelevant because EA Advantage is not a party to this proceeding. But even if EA Advantage were a party, there would still be no liability because the economic reality of the work site was that Ozark controlled the work site (SUF # 26, 28-38). In fact, Calvert's son, Kyle, took over most of the interaction with the new employees, including the hiring of new drivers (SUF # 22-23) monitoring the drivers on a hands-on basis (SUF #22) and he provided them with Calvert employment documents (SUF # 23). Thus, EA Advantage's role in 2007 was even more marginalized than Employer Advantage's role in 2006. Because EA Advantage did not have (and never had) the power to hire and fire employees,

14

supervise or control Ozark employees' work schedule or conditions of employment or determine the rate or method of payment, it cannot be deemed a joint employer, even if it were a party.

On December 17, 2007, Ozark terminated all services with EA Advantage (SUF # 40). Thus, after December 29, 2007, Ozark's relationship with either Employer Advantage or EA Advantage was terminated and neither entity can have any liability as to plaintiff's FLSA claims.

## V. CONCLUSION

Plaintiffs cannot meet their fundamental obligation to demonstrate that an employer-employee relationship existed between them and Employer Advantage. Plaintiffs' failure undermines this entire case against Employer Advantage. Because of plaintiffs' failure the Court should grant Employer Advantage's Motion for Summary Judgment.

Respectfully submitted,

HUSCH BLACKWELL LLP

By: /s/ *John K. Power*
John Power MO Bar No. 35312
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
Telephone: (816) 983-8000
Facsimile: (816) 983-8080
john.power@huschblackwell.com

*Attorneys for Employer Advantage*

15

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies the foregoing was filed via the Court's CM/ECF System on this 26th day of November, 2014 and therefore electronically served upon:

**Brendan J. Donelon**
DONELON, P.C.
420 Nichols Road, Suite 200
Kansas City, MO 64112
(816)221-7100
Fax: (816)709-1044
Email: brendan@donelonpc.com

and

**Jason Brown**
Brown & Associates, LLC
301 S. US 169 Hwy
Gower MO 64454

ATTORNEYS FOR PLAINTIFFS

**Jason N. Shaffer**
1655 S. Enterprise
Suite A2
Springfield, Missouri 65804
(417) 866-9993 Telephone
(417) 886-3979 Fax
Email: jnshaffer@prodigy.net

ATTORNEY FOR DEFENDANT
OZARK DELIVERY OF MISSOURI L.L.C.

                                                /s/ *John K. Power*
                                                An attorney for Employer Advantage