# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| CALVIN CHILDRESS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No.: 6:09-cv-03133-MDH |
| | ) |
| OZARK DELIVERY OF MISSOURI | ) |
| L.L.C., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Pending before the Court is Defendant Advantage's Motion to Exclude the Testimony of Plaintiff's Expert Witness. (Doc. 130). Defendant seeks to exclude the testimony of Dr. Liesl M. Fox, whom Plaintiffs designated to calculate damages. The Court, after full and careful consideration, **DENIES** Defendant's motion.

## BACKGROUND

Plaintiffs Calvin Childress and Jolene Loyd brought the above-captioned lawsuit as a collective action pursuant to section 216(b) of the Fair Labor Standards Act ("FLSA"). Plaintiffs allege that Defendants willfully violated section 207 of the FLSA by failing to fully compensate local delivery drivers for all hours worked in excess of 40 hours per week. The action is brought against Ozark Delivery, L.L.C. ("Ozark"), Klein Calvert,[1] and Employer Advantage, L.L.C. ("Advantage")[2] as "joint employers." On February 3, 2010, the Court conditionally certified the case as a collective action. The class now includes fifty-six (56) opt-in plaintiffs who were

---

[1] Klein Calvert is the managing member and president of Defendant Ozark.

[2] Defendant Advantage contracted with Defendant Ozark to perform certain services including human resources, benefits, insurance, risk management, etc. The contract specified that the parties were entering into a "joint employer agreement."YGew

allegedly employed by Defendants between April 2006 and June 2009 as local van delivery drivers.

On August 27, 2014, Plaintiffs designated Liesl M. Fox, Ph.D., as an expert witness to testify regarding damage calculations. Dr. Fox earned a doctoral degree in biostatistics and has accumulated over twenty years of experience working as a statistical analyst and consultant. She reported that she frequently "prepare[s] damages calculations as an expert witness for other claims of unpaid time worked similar to the claim currently before the Court," including damage calculations in the FLSA collective action context. Defendant Advantage deposed Dr. Fox on October 1, 2014. Shortly thereafter, Defendant Advantage filed a "Motion to Exclude the Testimony of Plaintiff's Expert Witness" and requested that the Court preclude Dr. Fox from testifying at trial and bar Plaintiffs from making any use of Dr. Fox's report during the trial.

## STANDARD

The standard to admit expert testimony is stated in Federal Rule of Evidence 702 as amended in 2000 to conform with *Daubert v. Merell Dow Pharmaceuticals, Inc.*, 509 U.S. 479 (1993). The Rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

**DISCUSSION**

Defendant Advantage argues six different grounds for excluding the testimony of Dr. Fox. Defendant does not contest that Dr. Fox is "qualified as an expert by knowledge skill, experience, training, or education." Rather, Defendant's arguments focus on the factual basis for Dr. Fox's conclusions, the principles and methods she employed to assess damages, and the helpfulness of her testimony. Defendant argues exclusion is proper because: (1) Dr. Fox's expert report merely parrots information Plaintiff's counsel asked Dr. Fox to assume; (2) Dr. Fox's failure to question Plaintiff's counsel or to vet the information provided left Dr. Fox ignorant of the nature of Plaintiff's remuneration; (3) Dr. Fox's calculation of Plaintiff's regular rate of pay is incorrect as a matter of law; (4) Dr. Fox's calculation of Plaintiff's overtime rate of pay is incorrect as a matter of law; (5) Dr. Fox's calculation of damages for eleven Plaintiffs who failed to provide any information about the amount of overtime they allegedly worked has no evidentiary or scientific basis; and (6) given proper instruction, the jury is capable of performing simple damage calculations on its own, making Dr. Fox's expert testimony unnecessary. These various arguments are consolidated and addressed below.

### A. Factual Basis (Arguments 1, 2, 5)

Testimony in the form of an expert opinion must be based upon "sufficient facts or data." Fed. R. Evid. 702. The language used in Rule 702 is "broad enough to allow an expert to rely on hypothetical facts that are supported by the evidence." Fed. R. Evid. 702, 2000 Amendment Commentary. "The fact that an expert's testimony may be tentative or even speculative does not mean that the testimony must be excluded[.]" *Newell Puerto Rico, Ltd. v. Rubbermaid Inc.*, 20 F.3d 15, 21 (1st Cir. 1994). Rather, as a general rule, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to

3

examine the factual basis for the opinion in cross-examination." *Bonner v. ISP Technologies, Inc.*, 259 F.3d 924, 929 (8th Cir. 2001). This is because "questions of conflicting evidence must be left for the jury's determination." *Id.* at 930. A court should exclude an expert opinion as based upon insufficient facts or data only where "the analytical gap between the data and proffered opinion is too great" or "the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury." *Id.* at 929-30; *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006).

Here, Dr. Fox's report is based upon sufficient facts or data. In making her calculations, Dr. Fox relied on limited compensation data provided by Defendants, including payroll records from 2007 and employee W-2 Forms from 2008. For the remainder of the data, Dr. Fox relied on a spreadsheet created by Plaintiffs' attorneys that summarized the sworn testimony of class members regarding rates of pay and number of hours worked per week.[3] Where, as here, defendants failed to maintain proper and accurate records, employee testimony may be considered "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946); *Gomez v. Tyson Foods, Inc.*, 976 F. Supp. 2d 1169, 1181 (D. Neb. 2013) ("Employees may meet their burden of proof through testimony, documentary evidence and expert testimony, and may also rely on stipulated facts."); *Fast v. Applebee's Int'l, Inc.*, No. 06-4146-CV-C-NKL, 2009 WL 2391775, at *3-4 (W.D. Mo. Aug. 3, 2009) (allowing expert testimony based on questionnaire

---

[3] Defendant does not argue that this summary sheet is factually inaccurate in any way other than alleging it reports a "fictitious" hourly rate for each employee rather than a weekly salary. A review of the summary sheet and the employee opt-in statements reveals that Plaintiffs' counsel converted weekly salaries reported by class members into hourly rates of pay by dividing the stated weekly salaries by forty, representing the numbers of hours Plaintiffs believe the pay was intended to compensate. Dr. Fox's report indicates that she used the hourly rate of pay reported by Plaintiffs' counsel to calculate unpaid overtime compensation only for the year 2006, which covered only four opt-in plaintiffs. To the extent that Defendant argues Dr. Fox incorrectly used an hourly rate of pay to calculate her damages rather than a weekly salary, such arguments are more fully addressed below.

4

responses from employees).[4]  Dr. Fox relied on defendants' payroll records where available and then supplemented missing information, such as hours worked per week and employee compensation rates for 2006, with the sworn testimony of employees. Therefore, the Court finds that Dr. Fox relied on "sufficient facts or data" in making her assessment of damages.

Defendant's arguments to the contrary are unavailing. First, Defendant argues that Dr. Fox's report merely "parrots" information provided by Plaintiffs' counsel and should be excluded because Dr. Fox "did not know the basis for any of the information" and "did nothing to investigate, evaluate, or test the accuracy of the information." Defendant's inference that a plaintiff's expert is required to test the veracity of opt-in plaintiffs' testimonies is at odds with case law cited above, which provides: (1) experts may rely on hypothetical or tentative facts; (2) as a general rule, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination"; and (3) there is a "relaxed evidentiary standard" in cases where an employer fails to keep accurate records under the FLSA. Here, Dr. Fox relied upon data derived from the sworn testimony of employees regarding their wages and hours.[5] Defendant cites no relevant case law to demonstrate that an expert's reliance on such evidence is improper.[6] Therefore, Defendant's first argument for the exclusion of Dr. Fox's testimony is denied.[7]

---

[4] Once a plaintiff meets the relaxed evidentiary standard under *Anderson*, the burden then shifts to the employer to "produce evidence to dispute the reasonableness of the inference." *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (8th Cir. 2013).

[5] Dr. Fox's report acknowledges that data in the spreadsheet "were determined by Counsel for the Plaintiffs from information gathered from the plaintiffs" and that the "basis of this information from the plaintiffs were documents also provided to the Defendants under Bates numbers Childress P1-P49."

[6] Defendant did cite to a Northern District of Alabama case involving monopolization, where the district court critiqued an expert for relying on an estimate of market share provided to him by counsel as opposed to doing his own independent analysis of the market share. *Bailey v. Allgas, Inc*., 148 F. Supp. 2d 1222, 1241 (N.D. Ala. 2000). The district court referenced case law indicating that, in monopoly cases, the construction of a relevant economic market may not be based upon lay opinion testimony. *Id.* On appeal, the Eleventh Circuit affirmed, noting that the "construction of the relevant market and a showing of monopoly power must be based on expert testimony." *Bailey*

5

Next, Defendant argues that Dr. Fox had insufficient facts or data to make a conclusion regarding the nine (9) opt-in plaintiffs who failed to report the amount of overtime that they worked. In making her assessment of damages, Dr. Fox assigned to these individuals a fictitious number of overtime hours based upon the average number of overtime hours worked by the other forty-nine (49) opt-in employees. Defendant claims there is "no legal basis for this sort of gap-filling" and argues that Dr. Fox should have used "methods of scientific statistical sampling" to determine the average. The Court recognizes the potential windfall associated with the extrapolation of data in these type of cases;[8] however, the policy rationale discussed in

---

*v. Allgas, Inc.*, 284 F.3d 1237, 1246, 1250 (11th Cir. 2002). There is no similar rule in FLSA overtime wage cases concerning the method of pay (i.e. hourly or salary).

[7] Defendant also cited a case recently decided by the Eighth Circuit that affirmed a summary judgment granted against an individual plaintiff in an FLSA overtime case because the plaintiff "failed to put forward any evidence of the amount and extent of his work in excess of forty hours a week for any week worked . . . let alone evidence of excess hours worked every week of his employment." *Holaway v. Stratasys, Inc.*, 771 F.3d 1057 (8th Cir. 2014). There, the court held that the individual's "contradictory and bare assertions" of overtime presented insufficient evidence as a matter of law to show the amount and extent of overtime work such that a jury could conclude the plaintiff worked beyond forty hours a week in any specific week of his employment. *Id.* at *3.

The case at bar is distinguishable in two respects. First, the matter is currently before the Court on a *Daubert* motion rather than a motion for summary judgment. In assessing a *Daubert* motion, the Court has limited ability to assess the sufficiency of the evidence; only if the expert's opinion is "so fundamentally unsupported" should the Court find that the expert's testimony is not based on sufficient facts or data. Courts favor the admission of expert testimony and leave disputes regarding the underlying factual basis of the testimony for cross-examination, rebuttal witnesses, etc. Furthermore, the Court finds exclusion of Dr. Fox on the grounds stated in *Holaway* would be prejudicial to Plaintiffs because (1) the decision came down the same day Plaintiff's suggestions in opposition were submitted, and (2) the parties were not notified to submit evidence (such as deposition testimony, affidavits, etc.) to the court addressing the admissibility and credibility of the underlying evidence for any or all of the opt-in plaintiffs.

Second, the case presented here is a collective action whereas the case in *Holaway* was an individual action. This is significant because (1) in the collective action context, the number of persons claiming unpaid hours worked in excess of forty tends to show a pattern or practice, which increases the credibility of such "bare assertions" and affects the burden of proof; and (2) the feasibility and extent of underlying investigation in collective actions is far different. *See generally Bouaphakeo v. Tyson Foods, Inc.*, No. 12-3753, 2014 WL 6657503, at *3 (8th Cir. Nov. 19, 2014).

[8] *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013) ("And if for example the average number of overtime hours per class member per week was 5, then awarding 5 x 1.5 x hourly wage to a class member who had only 1 hour of overtime would confer a windfall on him, while awarding the same amount of damages to a class member who had 10 hours of overtime would (assuming the same hourly wage) undercompensate him by half. The differences would not be trivial, because the technicians' average hourly rate was about $15.").

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), *superseded by statute on other grounds*, allows reasonable extrapolation in cases like the one before the Court.

In *Anderson*, the Supreme Court stated that an employer who fails to maintain records regarding wages and hours "cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements . . . of the Act." 328 U.S. at 688. Accordingly, courts uphold the use of extrapolated data in FLSA collective actions where the employer fails to adequately maintain records and where a "reasonable inference" exists between the underlying data and the derived data. *See Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 799 (8th Cir. 2014), *reh'g denied* 2014 WL 6657503 (8th Cir. Nov. 19, 2014) (noting that in *Anderson* "testimony from eight employees established liability for 300 similarly situated workers" and affirming the use of "average times calculated from a sample of 744 observations" in calculating individual damages); *Gomez v. Tyson Foods, Inc.*, 976 F. Supp. 2d 1169, 1181 (D. Neb. 2013) (under *Anderson*, "[r]epresentative evidence is sufficient to establish damages in a class action case").

*See also U.S. Dep't of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 781 (6th Cir. 1995) ("The investigator's estimates in this case were based on the employees' interview statements, the employment records, and the employees' testimony at trial. Consideration of such evidence is appropriate in determining the amount of back wages due. The information was also used to make estimates and calculations for similarly situated employees who did not testify. The testimony of fairly representative employees may be the basis for an award of back wages to nontestifying employees." (internal citations omitted)); *Reich v. S. Maryland Hosp., Inc.*, 43 F.3d 949, 951 (4th Cir. 1995) ("Virtually all of the cases using representative testimony involve a fairly small employee population, a limited number of employee positions, and uniform work

tasks."); *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 702 (3d Cir. 1994) ("[T]he Secretary can rely on testimony and evidence from representative employees to meet the initial burden of proof requirement. . . . once the pattern is established, the burden shifts to the employer to rebut the existence of the violations or to prove that individual employees are excepted from the pattern or practice.").

Therefore, the Court does find a legally sufficient basis for the "gap filling" suggested by Defendant. Dr. Fox used the overtime hours reported by 49 employees to deduce the average number of overtime hours worked by 9 other employees. In other words, Dr. Fox used the reports of roughly 80% of the class members to estimate the average number of overtime hours worked by the other 20% of class members. Courts uphold the use of such estimates. *See Johnson v. Big Lots Stores, Inc.*, No. CIV.A. 04-3201, 2008 WL 1930681, at *8 (E.D. La. Apr. 29, 2008) (upholding expert testimony based on survey responses of approximately 60% of members); *see also Donovan v. Williams Oil Co.*, 717 F.2d 503, 505 (10th Cir. 1983) (upholding expert opinion based on testimony of 19 employees to support conclusion regarding 34 employees). No evidence currently before the Court indicates that the 49 reporting drivers were non-representative. Thus, Dr. Cox could reasonably infer from the testimony of the 49 drivers that the average number of overtime hours worked by the other 9 drivers was roughly 16 hours per week. Any further arguments by Defendant concerning this matter can be addressed through summary judgment, cross-examination, rebuttal witnesses, and/or jury instructions. *See Bouaphakeo v. Tyson Foods, Inc.*, No. 12-3753, 2014 WL 6657503, at *8 (8th Cir. Nov. 19, 2014) (Benton, J., respecting denial of rehearing en banc).

Finally, Defendant argues that Dr. Fox's testimony is flawed because her calculation assumes Plaintiffs were paid an hourly wage. Defendant stresses that Plaintiffs were paid a fixed

8

Case 6:09-cv-03133-SRB   Document 146   Filed 12/16/14   Page 8 of 14

weekly salary. To the extent that Defendant argues this alleged factual error renders Dr. Fox's testimony inadmissible, the Court rejects Defendant's argument at this time. Although Defendant presented persuasive documentary and testimonial evidence that Plaintiffs were paid via weekly salary, the Court is not prepared to find Dr. Fox's assumption that the employees were paid hourly "fundamentally unsupported."

Plaintiffs claim they were paid an hourly amount based upon a forty hour workweek, rather than a fixed weekly salary, because in weeks where they worked less than forty hours, "their pay was lowered accordingly by the hourly rate."[9] However, Plaintiffs submitted little evidence to the Court showing the employees' pay was reduced in weeks where they worked less than forty hours. The only evidence submitted by Plaintiffs was the report of Dr. Fox, which referenced 2007 compensation data from Defendants listing the alleged number of hours each employee worked per week and his/her gross earnings per week. Dr. Fox indicated in her report that this data sometimes listed the hours per week as less than forty. Her deposition testimony, offered by Defendants, further provides that "if they were paid a weekly salary, then I would have expected to see their regular pay not vary." Fox Depo. 46: 2-11. Plaintiff did not attach to

---

[9] Typically, where employees are paid via weekly salary pursuant to 29 C.F.R. § 778.114, as Defendant alleges here, the employees "must receive a fixed weekly salary that remains the same regardless of the number of hours that the employee works during the week." *Kanatzer v. Dolgencorp, Inc.*, No. 4:09CV74 CDP, 2010 WL 2720788, at *6 (E.D. Mo. July 8, 2010) (citing *Flood v. New Hanover County*, 125 F.3d 249, 252 (4th Cir.1997)). Moreover, "in cases where the understanding of the parties is not clearly shown as to whether a fixed salary is intended to cover a fixed or a variable workweek the practice of making 'deductions' from the salary for hours not worked in short weeks will be considered strong, if not conclusive, evidence that the salary covers a fixed workweek." 29 C.F.R. § 778.306. "If an employee is compensated at a fixed salary for a fixed workweek and if this salary is reduced by the amount of the average hourly earnings for each hour lost by the employee in a short workweek, the employee is, for all practical purposes, employed at an hourly rate of pay." 29 C.F.R. § 778.306.

However, it should be noted that regulations concerning "salary" employees under the executive exemption indicate that the "prohibition against deductions from pay in the salary basis requirement is subject to [certain] exceptions." See 29 C.F.R. § 541.602. For example, an employer may deduct time from pay when the "employee is absent from work for one or more full days for personal reasons, other than sickness or disability." *Id.*

its suggestions the underlying pay data or any other specific evidence indicating that a plaintiff's pay was reduced when he or she worked less than forty hours per week.

The fact that Plaintiffs were paid hourly may be speculative, hypothetical, or arguable at this time based upon the facts presented; however, the existence of an hourly wage is not so great an analytical gap that the exclusion of Dr. Fox's report is proper at this stage. *See* Fed. R. Evid. 702, 2000 Amendment Commentary ("When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.").

Therefore, the Court finds Plaintiffs' arguments and "evidence" sufficient at this stage of litigation to deny the exclusion of Dr. Fox's testimony. Defendant may later re-address this issue at pre-trial/trial.

### B. Principles and Methods (Arguments 3, 4)

The crux of Defendant's motion to exclude the report and testimony of Dr. Fox is that she applied the incorrect formula to calculate Plaintiffs' damages. "Although calculation of the amount of damages is a factual determination, the formula used in making that calculation is a question of law." *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449, 452 (2d Cir. 1998). Defendant argues that Dr. Fox erred by calculating Plaintiffs' overtime compensation using the "general method" described in 29 C.F.R. § 778.107 as opposed to the "fluctuating workweek" method as described in 29 C.F.R. § 778.114.

The general method to compute damages in an FLSA overtime case is to multiply one and one-half times the regular rate of pay by the number of hours worked in excess of forty. *See* 29 C.F.R. § 778.107. "The regular hourly rate of pay of an employee is determined by dividing

10

his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him [not exceeding forty] in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. Dr. Fox used the general method to calculate Plaintiffs' damages. Her report shows that she divided each plaintiff's yearly compensation by the number of hours worked during the year, not in excess of forty per week, in order to determine that employee's regular rate of pay.[10] Dr. Fox then multiplied that number by one and one-half times the employee's alleged overtime hours worked that year.

Alternatively, the "fluctuating workweek" method of calculating damages is appropriate where "there is a clear mutual understanding of the parties that the fixed salary is compensation . . . for the hours worked each workweek, whatever their number" and the "salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked." 29 C.F.R. § 778.114(a).[11] Where these requirements are met, the regular rate is calculated by "dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113(a). If the parties in fact agreed that a fixed weekly salary constitutes payment at the regular rate for any and all hours worked, then "the

---

[10] Defendant argues Dr. Fox erred by calculating the regular rate of pay on an annual basis rather than a weekly basis. The Court finds that based upon the available evidence, Dr. Fox's assessment is reasonable. Defendants produced no pay data for 2006 and 2009 and the pay data for 2008 was expressed in an annual gross pay figure; only the data from 2007 reflected weekly compensation. Additionally, Plaintiffs claim none of the data from Defendants represented the number of hours actually worked by plaintiffs per week. Moreover, it is unreasonable to ask opt-in plaintiffs to recall, five years later, the specific number of overtime hours worked and pay received each week. Defendant cannot "complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946), *superseded by statute on other grounds*.

[11] "To apply § 778.114: 1) the employee's hours must fluctuate from week to week; 2) the employee must receive a fixed weekly salary that remains the same regardless of the number of hours that the employee works during the week; 3) the fixed amount must be sufficient to provide compensation at a regular rate not less than the legal minimum wage; 4) the employer and the employee must have a clear, mutual understanding that the employer will pay the employee the fixed weekly salary regardless of the hours worked; and 5) the employee must receive a fifty percent overtime premium in addition to the fixed weekly salary for all hours that the employee works in excess of forty during that week." *Kanatzer v. Dolgencorp, Inc.*, No. 4:09CV74 CDP, 2010 WL 2720788, at *6 (E.D. Mo. July 8, 2010) (citing *Flood v. New Hanover County*, 125 F.3d 249, 252 (4th Cir.1997)).

11

employee's regular rate of pay for a given week is calculated by dividing the fixed weekly wage by the total number of hours worked in that week." *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 680 (7th Cir. 2010); *Ahle v. Veracity Research Co.*, 738 F. Supp. 2d 896, 918-19 (D. Minn. 2010). The overtime wages are then determined by multiplying the number of hours worked in excess of forty by one-half the regular rate of pay. 29 C.F.R. § 778.114(a).[12]

If Plaintiffs are determined to be weekly salary employees compensated under the fluctuating workweek standard, then the testimony of Dr. Fox may ultimately be excluded. *See Fast v. Applebee's Int'l, Inc.*, No. 06-4146-CV-C-NKL, 2009 WL 2391775, at *7 (W.D. Mo. Aug. 3, 2009) (excluding testimony based on incorrect legal premise). However, there is currently insufficient evidence before the Court to determine whether the employees were paid a "fixed weekly salary." For this reason, the Court is unable to decide at this time whether the fluctuating workweek standard under 29 C.F.R. § 778.114(a) should apply in this case.[13] Therefore, the Court denies Defendant's argument that Dr. Fox miscalculated damages as a matter of law. *See Gonzalez v. Sara, Inc.*, No. 4:12CV1586 CDP, 2014 WL 28662, at *3-4 (E.D. Mo. Jan. 2, 2014) (refusing to grant summary judgment in similar scenario); *see also Kanatzer v. Dolgencorp, Inc.*, No. 4:09CV74 CDP, 2010 WL 2720788, at *6-7 (E.D. Mo. July 8, 2010) (upholding expert testimony that applied regular method rather than fluctuating workweek method based on facts of case).

---

[12] The fluctuating workweek method is also used as a remedial measure in situations where an employer improperly misclassifies an employee as exempt. *Boyle v. Barber & Sons, Co.,* No. 03-0574-CV-W-FJG, 2005 WL 6561489, at *3 (W.D. Mo. Mar. 4, 2005); *Smith v. Frac Tech Servs., LLC*, No. 4:09CV00679 JLH, 2011 WL 96868, at *35 (E.D. Ark. Jan. 11, 2011).

[13] *See Black v. SettlePou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013) ("After the trier of fact has found that a misclassified employee is due overtime pay, the court must determine as a matter of law whether to apply the standard method of calculating the amount of overtime pay using the one and one-half times the regular rate of pay multiplier found in the FLSA, or to apply the FWW multiplier of only one-half of the regular rate of pay.").

### C. Helpfulness to Trier of Fact (Argument 6)

Lastly, Defendant Advantage argues that Dr. Fox's expert opinion should be excluded because the calculation of Plaintiffs' damages is "rather simple" and either the jury or the Court could perform these calculations without expert testimony. In essence, Defendant argues that Dr. Fox's testimony fails the requirement that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Because Defendant believes Dr. Fox's testimony is unhelpful, Defendant argues that allowing her testimony would "cloak Dr. Fox's overtime estimates with an undeserved authority" while merely parroting information from Plaintiffs' counsel.

"Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Marmo v. Tyson Fresh Meats, Inc.,* 457 F.3d 748, 758 (8th Cir.2006). Damage experts are helpful so long as their testimony "concerns matters beyond the general knowledge of average individuals." *Sancom, Inc. v. Qwest Commc'ns Corp.*, 683 F. Supp. 2d 1043, 1067 (D.S.D. 2010) (citing *United States v. Shedlock*, 62 F.3d 214, 219 (8th Cir.1995)). Damage experts are commonly employed in the FLSA collective action context in order to calculate damages for overtime compensation. *See, e.g., Acosta v. Tyson Foods, Inc.*, No. 8:08CV86, 2013 WL 7849473, at *24 (D. Neb. May 31, 2013) order clarified, No. 8:08CV86, 2013 WL 3716445 (D. Neb. July 12, 2013); *Fast v. Applebee's Int'l, Inc.*, No. 06-4146-CV-C-NKL, 2009 WL 2391775, at *7 (W.D. Mo. Aug. 3, 2009).

The Court finds that Dr. Fox's opinion concerning the appropriate back pay for 56 persons over a span of three years will be helpful to the jury in determining its award of damages. Dr. Fox did more than simply multiply the reported number of overtime hours by one and one-half times the regular wage. Here, Dr. Fox calculated the weekly compensation for each

13

employee using three different types of pay data, which varied by year; she segregated weeks where employees may have worked less than forty hours; she calculated and applied acceptable averages to supplement missing data; she derived the regular rate of pay; and she performed calculations for at least 56 individuals who had varying compensation rates at various times. *See Sancom, Inc. v. Qwest Commc'ns Corp.*, 683 F. Supp. 2d 1043, 1067 (D.S.D. 2010) (holding expert's analysis involved more than the rudimentary multiplication that opposing party asserted). Dr. Fox's opinion regarding the amount of damages to which Plaintiffs are entitled is both relevant and helpful to the jury. The jury is free to determine the weight and credibility to give expert testimony regarding damages and may accept or reject, in whole or in part, the expert's assessment. *See Niemiec v. Union Pac. R.R. Co.*, 449 F.3d 854, 859 (8th Cir. 2006).

## DECISION

Based on the foregoing analysis, the Court finds that Plaintiffs proved the admissibility of Dr. Fox's expert testimony by a preponderance of the evidence. Her testimony is based upon sufficient facts or data, her conclusions were derived from reliable principles and methods, and her opinion will assist the trier of fact to determine a fact in issue. Accordingly, Defendant Advantange's *Daubert* motion (Doc. 130) is **DENIED**.

**IT IS SO ORDERED**.

Dated: December 16, 2014

                                              */s/ Douglas Harpool*
                                              **DOUGLAS HARPOOL**
                                              **UNITED STATES DISTRICT JUDGE**