**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| CALVIN CHILDRESS, et al. On Behalf of Themselves and of all Others Similarly Situated, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No.: 09-CV-3133-MDH ) |
| OZARK DELIVERY OF MISSOURI L.L.C. and KLEIN CALVERT, and EMPLOYER ADVANTAGE, L.L.C. | ) ) ) ) ) |
| Defendants. | ) |

# **REPLY BRIEF**

Respectfully submitted,

HUSCH BLACKWELL LLP

John Power           MO Bar No. 35312
R. Anthony Costello  MO Bar No. 50968
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
Telephone: (816) 983-8000
Facsimile: (816) 983-8080
john.power@huschblackwell.com
tony.costello@huschblackwell.com

*Attorneys for Employer Advantage, LLC*

## I. <u>INTRODUCTION</u>

In their Response (Doc. 150), plaintiffs only provide legal citation in support of general (and non-controversial) propositions of law. Tellingly, plaintiffs do not cite to a single case that supports their arguments or specific application of their arguments. For example, plaintiffs argue, without legal support, that merely having the theoretical power to hire and fire an employee (without ever exercising that power) is enough to make the party with the theoretical power an employer. *See plaintiffs' Response* at p. 26. Case law refutes plaintiffs' argument. In order to satisfy the economic realities test, the courts require that plaintiffs must prove that the purported employer exercised actual control of the employee in the work place. *See Hembree v. Mid-Continent Transport, Inc*, 2011 WL 5841313, at *1 (W.D. Mo. Nov. 21, 2011) ("In other words, 'unexercised authority is insufficient to establish liability as an employer.'") (citation omitted); *Wirtz v. Pure Ice Co.,* 322 F.2d 259, 263 (8th Cir. 1963). *See also, Gray v. Powers*, 673 F3d 352, 356 (5th Cir. 2012) ("[A] status based inference of control cannot alone suffice to create a genuine fact issue whether [the defendant] had power to hire and fire bartenders."). Plaintiffs' focus on theoretical authority completely misses the objective of the economic realities test. The goal of the test is to determine whether the employee is, in actuality, economically dependent upon the Defendant. Here, the actuality is that the plaintiffs did not depend upon Employer Advantage.

Additionally, plaintiffs do not cite to a single case to compare or contrast with the facts of this case. Plaintiffs' failure indicates that there is no case law on point that supports plaintiffs' position that Employer Advantage is an employer under the Act.

1

Although the plaintiffs take issue with portions of Employer Advantage's motion for summary judgment, there are certain, important points that the parties do agree upon. The parties agree to the following

(1). Courts, including Missouri courts, use the economic reality test in determining when a party is a joint employer;

(2). The four elements of the economic reality test are that the alleged employer (i) had the power to hire and fire the plaintiffs; (ii) supervised and controlled plaintiffs' work schedules and conditions of employment; (iii) determined the rate and method of payment; and (iv) maintained plaintiffs' employment records.[1]

(3). No one element of the economic reality test is dispositive of determining whether a party is an employer;

(4) If the plaintiffs can satisfy the economic reality test, the defendant is an "employer" as that term is broadly defined under the Act. But if, however, the plaintiffs cannot satisfy the test, the defendant is not an "employer" as that term is broadly defined under the Act; and

(5). At the least, Employer Advantage is not responsible or liable for any of plaintiffs' FLSA claims that post-date December 29, 2007.

The economic realities of the Ozark Delivery ("Ozark") worksites was such that it was Ozark, and only Ozark, that controlled the workplace and the employees. Put differently, as a matter of economic reality, the Ozark employees were dependent solely on Ozark and, as such, Ozark was their employer.

## II. ARGUMENT

A. Economic Realities Test

In order to satisfy the stated remedial purposes of the FLSA, courts have looked at the economic reality of the relationship between the plaintiffs and the defendant to determine whether an employer/employee relationship exists between them. The point of

---

[1] Notably absent from the economic reality test is what terms the potential employers may agree to in a written document. Whether the parties intended to create an employment relationship is irrelevant. *Beck v. Boce Group*, 391 F. Supp. 1183, 1186 (S.D. Fla 2005).

the economic realities test is to assess and determine whether the putative employee is economically dependent upon the alleged employer. *See Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1538 (7th Cir. 1987) ("Economic dependence is more than just another factor, it is instead the focus of all considerations."); *Castillo v. Givens*, 704 F.2d 181, 190 (5th Cir. 1983) ("[T]he touchstone of economic reality in analyzing a possible employer/employee relationship for purposes of the FLSA is dependency.").

Here, it is clear that the plaintiffs are not economically dependent on Employer Advantage. It was either Calvert or an Ozark manager who had the sole discretion as to who was hired, fired, the schedule and what route the person worked, and how much that person was paid. See Consolidated Statements of Uncontroverted Material Facts ("Consolidated Statement") ¶¶ 26-38 and Exhibits J and K, attached hereto and made a part hereof.

B. <u>Under the Economic Realities Test, Employer Advantage is Not an Employer</u>

The case law supports the finding that Employer Advantage was not an employer of the Ozark employees. As discussed in Employer Advantage's brief in support of its summary judgment motion, the Western District of Missouri dismissed a case very similar to the present case because two of the defendants were not joint employers. *Loyd v. Ace Logistics, LLC*, 2008 WL 5211022 (WD Mo. Dec. 12, 2008). Nonetheless, the Plaintiffs in this case argue that *Loyd* is inapplicable because the context of *Loyd* was a motion to dismiss, rather than a motion for summary judgment. See Plaintiffs' Response at p. 29. In other words, plaintiffs argue that *Loyd* was nothing more than a simple pleading case. What plaintiffs' argument neglects is that the court in *Loyd* obviously had

evidence and information before it that went beyond the pleadings.[2] In its motion, TSL asserted that it furnished personnel to Ace Next Day and it handled the payroll and workers compensation insurance for those employees. *Id*., at *3. In response to the motion, plaintiffs put before the court evidence of plaintiffs' W2s that identified TSL as her employer and that TSL maintained the employees' human resource files and ensured compliance with all federal wage and hour laws. *Id*., at *4. Plaintiffs also submitted to the court pages from TSL's website and TSL advertisements that was evidence that TSL held itself out as a joint employer and that it maintained employee files, provided payroll administration and kept abreast of the trucking industry's compliance issues and labor laws. *Id*. Thus, at the time the court ruled on defendants' motion, there was evidence before the court outside of the pleadings that went directly to the issue of whether the defendants satisfied the economic realities test. The court considered all of the evidence before it and concluded that because the defendants did not hire or fire the plaintiffs or control her work schedule or conditions of employment, they were not her employers and it dismissed the case as to them.

This court should likewise conclude that Employer Advantage was not an employer of the plaintiffs. As stated above, Employer Advantage did not participate in three of the elements of the economic reality test. *See supra*, at p. 3. Moreover, there is no evidence to suggest that the plaintiffs were, in any way, economically dependent upon Employer Advantage. In fact, all the evidence is to the contrary. The plaintiffs rendered the entirety of their services to and were dependent upon Ozark and/or Klein Calvert.

---

[2] Interestingly, the court in *Loyd* dismissed the case as to the two non-employers (TSL and Ace Logistics) without granting plaintiffs leave to file an amended complaint and, according to the court file, plaintiffs never attempted to amend their petition to reassert their claims against the two defendants.

Either Calvert, his son, or an Ozark manager interviewed all potential employees, they hired them, trained them, set their salaries, determined their routes and work schedule and fired or demoted them. *See* Consolidated Statement ¶¶ 26-38. *Bartels v. Birmingham*, 332 US 126, 130 (1996) (the hallmark of what constitutes "employees" in this context is 'those who are dependent upon the business to which they render service."). In the present case, no employee was dependent upon Employer Advantage as Ozark continued to operate after it terminated its relationship with Employer Advantage and, only went out of business because it lost its contract with DHL. *See* Exhibit C to Defendant's Motion at pp. 79:24-81:23.

But even if *Loyd* were inapposite to the present case (which it is not), there are ample summary judgment cases with facts consistent with the present case where the court found that there was no joint employment. In *Thornton v. Charter Communications, LLC*, 2014 WL 4794320 (E.D.Mo. Sept. 25, 2014), a case cited favorably by the plaintiffs, the court employed the economic realities test[3] and determined that two of the defendants (a cable or satellite installation company and its parent) did not employ the various technicians who installed and repaired cable, Internet and telephone services. The moving defendant in *Thornton* had the following control over the plaintiffs and their worksite: (1) it required background and drug checks on all potential employees and it had the ultimate authority on whether an applicant should be hired; (2) it could unilaterally keep an employee from working; (3) it provided training to

---

[3] In addition to assessing the four formal factors set out in *Loyd*, the court in *Thornton* also considered a fifth factor, whether the alleged employer's premises and equipment were used for the plaintiffs' work. *Id.*, at *16. The plaintiffs in this case cannot satisfy this element either as all the work was done from Ozark's offices and all the trucks were leased by Ozark.

management (so that management could train the employees) and to the employees; (4) it gave daily work orders for the jobs to be done; (5) it inspected the plaintiffs' work in the field; and (6) it maintained daily log records on the plaintiffs' technicians. *Id*., *2-4.

Yet despite all of defendants' control of the employees and the worksite, the Court held that the defendant was not an employer because although Charter's conduct and interaction with the employees affected them, it did not constitute supervision or control over them. *Id*, at *16. ("While Charter's supervision and control may appear substantial in degree, it is qualitatively different from the control exercised by employers over employees." (citation omitted)). Here, Employer Advantage did not affect the plaintiffs, let alone control them. *See* Consolidated Statement, ¶ 26-38.

The two most analogous cases to the case before the court are *Beck v. Boce Group* and *Jeanneret v. Aron's Coast Towing, Inc.*, 2002 WL 32114470 (S.D. Fla. 2002).[4] The defendants in both *Beck* (Presidio) and *Jeanneret* (Sundance) were employee leasing companies and both performed administrative payroll services for the other named defendants (who were admitted employers of the defendants).[5] Like Employer Advantage and Ozark, Presidio and Sunshine each entered into subscriber agreements with their respective co-parties. In *Beck*, Presidio's subscriber agreement stated that Presidio would provide various administrative services to the co-defendant, including payroll processing and the payment of wages. *Beck*, 390 F.Supp 2d at 1288, fn. 1. The agreement expressly stated that Presidio retained the authority to hire, terminate,

---

[4] Both *Beck* and *Jeanneret* employed an eight-part economic realities test. At least three of the eight elements ((1) power to hire and fire; (2) supervision and control of schedule and conditions; and (3) determining rate and method of payment) are the same as the elements identified in *Loyd* and the other Missouri cases.

[5] The factual background regarding the parties in *Beck* is found at 390 F.Supp 2d 1255, 1257-1258 and 391 F.Supp 2nd 1183, 1186, 1188, 1189.

discipline and reassign the leased employees. *Beck*, 391 F.Supp 2d at 1188. In addition to the foregoing, Presidio distributed handbooks to all of the employees. *Id*. Under the terms of the subscriber agreement in *Jeanneret*, Sunshine retained the "authority to hire, terminate, discipline and reassign the leased employees." *Jeanneret*, 2002 WL 32114470 at *5. In addition, Sunshine agreed that by entering into the agreement it was creating a joint employment relationship with the co-defendant. *Id.,* at *4. Both Presidio and *Jeanneret* moved for summary judgment claiming that they were not employers under the FLSA. *Beck*, 391 F.Supp 2d at 1185, *Jeanneret*, 2002 WL 32114470 at *1.

In *Beck*, the court ruled that a party is in control of the workers if the defendant "determines the number of workers hired for a job, when work should begin on a particular day, which workers should be assigned to specific tasks and whether a worker should be disciplined or retained." *Beck*, 391 F.Supp 2d at 1187. The plaintiffs argued that Presidio satisfied the court's definition of control because under the subscription agreement Presidio had the right of direction and control over management of safety and risk issues and it also retained the right to fire and discipline employees. *Id.* at 1188. The court rejected plaintiffs' argument because "economic realities test evaluates the actual working relationship. Thus, plaintiffs must present evidence that shows in practice the defendant exercised control over them." *Id*. Because the plaintiffs failed to present any evidence of the actual working relationship, the court found that the plaintiffs could not satisfy the control element of the test. *Id*.

Thereafter, the plaintiffs argued that Presidio had the right to hire and fire them and supervise their work because Presidio assisted in the hiring and firing process by providing the necessary forms, personnel handbooks and necessary policies and

procedures (*e.g.*, drug testing authorizations and other pre-employment documents). *Id.*, at 1188-1189.[6] The court found the plaintiffs' arguments unavailing because those documents, handbooks, policies and procedures failed to establish that Presidio possessed any power in practice over the employees. *Id.*, at 1189. Because there was no economic dependency between Presidio and the plaintiffs, the court granted Presidio's summary judgment motion.

The court in *Jeanneret* reached a similar conclusion. In *Jeanneret*, the plaintiffs argued, in large part, that Sunshine[7] was their employer because the subscriber agreement expressly provided both that the defendants were joint employers and that Sunshine retained the authority to hire, terminate, discipline and reassign the leased employees. *Jeanneret*, 2002 WL 3211470 at *4-5.[8]

In rejecting plaintiffs' argument, the court reasoned that plaintiffs' exercise of "por[ing] over the fine print of a contract which the parties to the contract in large part ignored" entirely misses the objective of determining economic dependence. Instead, the economic realities test "specifically looks to the actual economic relationship" of the parties, which is determined by the way the "parties conducted themselves in practice." *Id.* at *9.

---

[6] The plaintiffs also argued that the language in the subscriber agreement was further evidence that Presidio was an employer. *Id.*, at 1188. The court rejected this argument. *Id.*, at 1189.

[7] Sunshine was the employee leasing company, plaintiffs were tow truck drivers and the co-defendant was a tow truck company.

[8] Plaintiffs also argued (and Sunshine admitted) that Sunshine provided advice to the tow truck company regarding safety conditions at the work site. The Court ruled, however, that Sunshine's advice was not enough to constitute Sunshine's supervision of plaintiffs' work. *Id.*, at *6.

The plaintiffs in the present case are guilty of focusing on the very thing that the courts in *Beck* and *Jeanneret* held to be irrelevant. Namely, the plaintiffs here have pored over the fine print of the Client Services Agreement and other documents and completely ignored what transpired in the workplace. In fact, plaintiffs fail to cite to even a single instance of an event that actually transpired in the work place, let alone an event that actually transpired in the work place that demonstrated plaintiffs' economic dependence on Employer Advantage. *See* Plaintiffs' Response at pp. 25-28. *Jeanneret*, 2002 WL 32114470 at *6 (Although the agreement between the defendants provided that the moving defendant retained the right of direction and control to hire, fire, discipline and reassign employees, there was no evidence that the moving defendant actually performed these functions.). Plaintiffs' failure is telling and it is fatal to their claim that Employer Advantage was their employer. Because all the uncontroverted material facts demonstrate that it was Ozark, not Employer Advantage, that controlled the employees and the workplace, [9] the court should grant Employer Advantage's motion for summary judgment.

C. <u>EA Advantage, Not Employer Advantage, Provided Services to Ozark After December 24, 2006</u>.

Incredibly, plaintiffs assert that EA Advantage ("EAA") did not exist in 2006 and, therefore, it could not enter into the Client Services Agreement. Plaintiffs base their argument on Articles of Termination stating, on its face, that EAA was filing its articles of termination in the State of Missouri because it was redomesticating to the State of

---

[9] *See* Consolidated Statement ¶¶ 26-38 and Exhibits J and K.

Florida.  *See* Plaintiffs' Exhibit F, attached to its Response.  Exhibit F is not, in and of itself, evidence that EAA did not exist in 2006.

More importantly, had plaintiffs performed the obvious legal research they would have discovered that EAA had, in fact, filed its Articles of Organization in Florida.  *See* Exhibit L.  Thus, EAA existed and had the power to enter into the agreement with Ozark.  EAA did not contract with Ozark so that Employer Advantage could avoid some theoretical liability.  Rather, Ozark terminated one contract (with Employer Advantage) and entered into a new agreement with EAA because Ozark decided it did not want to pay Employer Advantage to service workers compensation. [10]  *See* Exhibit C at p. 59:5-23.  EAA is the entity that provides backroom services except for workers compensation and, as a result, Ozark entered into an agreement with it for the year 2007.  Employer Advantage played no role with Ozark after December 2006.

### III.  CONCLUSION

Plaintiffs cannot establish that they were, in actuality, economically dependent on Employer Advantage.  Accordingly, plaintiffs cannot satisfy the economic realities test and Employer Advantage is not their employer for the purposes of the FLSA.  The Court should dismiss plaintiffs' claims against Employer Advantage with prejudice.

---

[10] Nor is there anything inappropriate with the same people running multiple companies or having an interest in multiple companies.  In fact, the concept of multiple or cross ownership is an essential element of American capitalism.

Respectfully submitted,

HUSCH BLACKWELL LLP


By: /s/ John Power
    John Power             MO Bar No. 35312
    R. Anthony Costello     MO Bar No. 50968
    4801 Main Street, Suite 1000
    Kansas City, Missouri 64112
    Telephone: (816) 983-8000
    Facsimile: (816) 983-8080
    john.power@huschblackwell.com
    tony.costello@huschblackwell.com

*Attorneys for Employer Advantage, LLC*


## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will accomplish service on the following:

**Brendan J. Donelon**
DONELON, P.C.
420 Nichols Road, Suite 200
Kansas City, MO 64112
(816)221-7100
Fax: (816)709-1044
Email: brendan@donelonpc.com

and

**Jason Brown**
Brown & Associates, LLC
301 S. US 169 Hwy
Gower MO 64454

ATTORNEYS FOR PLAINTIFFS

**Jason N. Shaffer**
1655 S. Enterprise
Suite A2
Springfield, Missouri 65804
(417) 866-9993 Telephone
(417) 886-3979 Fax
Email: jnshaffer@prodigy.net

ATTORNEY FOR DEFENDANT
OZARK DELIVERY OF MISSOURI L.L.C.
AND KLEIN CALVERT

          /s/ R. Anthony Costello
          An attorney for Employer Advantage, LLC